COURT OF APPEALS OF VIRGINIA

Present:  Judges Kelsey, Petty and Senior Judge Bumgardner

WILLIAM ROTHGEB, SR.

v.      Record No. 1396-06-3

HARRISONBURG ROCKINGHAM
    DEPARTMENT OF SOCIAL SERVICES

MEMORANDUM OPINION*
PER CURIAM
DECEMBER 28, 2006

FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
John J. McGrath, Judge

(Warren A. Picciolo, on brief), for appellant.  Appellant submitting
on brief.

(Kim Van Horn Gutterman, Assistant County Attorney; Roland M.
L. Santos, Guardian *ad litem* for the infant children, on brief), for
appellee.  Appellee and Guardian *ad litem* submitting on brief.

William Rothgeb, Sr.[1] appeals a decision of the circuit court terminating his parental rights

to his three children, W., B., and E.  Rothgeb contends the circuit court erred as a matter of law by

(i) ordering termination of his parental rights because the Harrisonburg Rockingham Department

of Social Services ("DSS") failed to provide him with rehabilitative services, and (ii) approving a

foster care plan authorizing the adoption of the children.  Finding no error in the circuit court's

rulings, we affirm.

I.

We view the evidence in the "'light most favorable' to the prevailing party in the circuit

court and grant to that party the benefit of 'all reasonable inferences fairly deducible therefrom.'"

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] We identify appellant by "William Rothgeb, Sr." in conformity with the circuit court
clerk's style of the case.  Other documents in the record, however, identify appellant as "Jr."
rather than "Sr." and use the middle initial "F." or middle name "Franklin."

Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 262, 616 S.E.2d 765, 767 (2005) (quoting Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)).

Rothgeb has three children by his marriage to Jennifer Rothgeb. At the time of the circuit court hearing, W. was twelve years old, B. was nine, and E. was seven. All three children had been in foster care for 38 of the preceding 58 months.

One of Rothgeb's neighbors testified that Rothgeb "quite often" drank alcohol "to excess." On at least five occasions within the two-and-a-half years the Rothgebs lived there, the neighbor saw Rothgeb so inebriated he was "passed out in the yard." There was "arguing constantly" going on at the Rothgeb house, said the neighbor, and one time he felt the whole "house shaking" while Rothgeb apparently battered his half of the duplex by "swinging a sledgehammer."

The neighbor also said the violence inside Rothgeb's house was so routine that the "cops was there at least five, six times" for disturbances. On one of those occasions, police responded to a domestic situation in which Rothgeb's wife said an intoxicated Rothgeb "grabbed her around the neck and began choking and hitting her" and "started throwing things around the kitchen including the kitchen table and chair." The fight moved to the yard where Rothgeb continued choking her. The altercation finally ended when she struck him in the face three times. Covered in blood from Rothgeb's bleeding nose, Rothgeb's wife told police the children were present in the home to witness the brawl. Rothgeb was arrested for public intoxication. "I've seen broken noses, bloody noses" after fights between Rothgeb and his wife, one neighbor testified. Rothgeb and his wife "fought a lot more after the kids came back" from stays in foster care.

Rothgeb also directed violence towards his children. On one occasion, a neighbor witnessed the "hundred and ninety pound" Rothgeb "flying in behind" B. at a dead "sprint"

shoving B. in the back so "extremely hard" that his "head kind of flinged back." Rothgeb then "jerked [B.'s] pants down and whipped his ass" with his hand as the neighbor (and the neighbor's young daughter) looked on. On another occasion, Rothgeb was observed paddling B. with a "piece of wood or a two by four."

Another violent incident led to the children's final removal from Rothgeb's home. An apparently intoxicated Rothgeb chased his wife off their porch, beat on the car windshield in an attempt to stop her from leaving, and had his legs run over when she "gunned" the car to leave the driveway. This, too, occurred while the children watched.

While in foster care, the children confided in their counselors and foster parents about the physical abuse they witnessed and suffered at Rothgeb's hands. W. told his counselor he was "afraid" of Rothgeb because of Rothgeb's "physical abuse" of his "mother and all the kids." W. told of being "'slammed' onto a sofa" by Rothgeb and, after a weekend visitation in the Rothgeb home on January 25-26, 2003, told his foster mother that "his head hurt" because Rothgeb "had pulled his hair." W. is now diagnosed with pervasive developmental disorder, cognitive disorder, and depressive disorder, and although twelve years old, functions at "maybe a preschool or kindergarten level" academically. W. also suffers from speech impairments, enuresis, and encopresis.

In counseling, B. described "a lot of fights" between his mother and Rothgeb that were frequently caused by Rothgeb after drinking alcohol. Rothgeb would hit him with a belt until he cried, he said, and if he didn't cry, Rothgeb would continue hitting him with a thicker belt until he did cry. B., who "saw himself as the protector" of his siblings and mother against Rothgeb's violence, is now diagnosed with major depression, suffers from enuresis and encopresis, and struggles with anger and aggression. B. blames his anger "on witnessing domestic violence in his home."

- 3 -

E. told her counselor that she saw Rothgeb "hitting [her mother] on her legs with his hands and with sticks" and that she once saw her mother "on the ground rolling around" after Rothgeb "had done something" to physically hurt her. Rothgeb also hit her brothers with sticks and belts, she said, and Rothgeb once hit her with a sledgehammer. All this "violence that she experienced and witnessed," said the counselor, made E. "afraid" of Rothgeb and caused her to suffer from post-traumatic stress disorder and disruptive disorder.

Rothgeb's alcohol abuse also resulted in an assault and battery arrest and four DUI convictions. One DUI arrest occurred while Rothgeb was driving with then four-year-old B. in the car. But despite his fourteen-year record of alcohol abuse and domestic violence, Rothgeb's documented participation in substance abuse treatment programs was limited to one brief group program at White Post Detention Center, a less-than-one-day session at Harrisonburg Diversion Center, a program through the local Community Services Board, and short-lived participation in Alcoholics Anonymous. After each program or release from jail, Rothgeb "relapsed" into further alcohol abuse and was never "consistent with alcohol treatment." Rothgeb's only excuse for failing to obtain treatment was "his [periodic] obligations to the National Guard."

A psychological evaluation of Rothgeb in 2003 corroborated the neighbors' and children's accounts of Rothgeb's alcohol-fueled violence. Rothgeb's test scores, reported the psychologist, indicated a "high probability of a substance abuse disorder," suggested Rothgeb could "'explode' with little provocation," and warned that if Rothgeb "continue[d] to use alcohol, his dependence will worsen."

Rothgeb's alcohol abuse also led to the children's neglect. Rothgeb lost custody of E. in 2001 due to lack of supervision when she, just three years old, was found wandering the streets in a feces and urine-soaked diaper. In January 2003, when the children were at the Rothgeb residence for a weekend visitation, E. drank kerosene from an unprotected container. Rothgeb

dismissed the incident as not being "anything much" to worry about, but he also warned W. not to tell anyone about the incident.

A social worker visited Rothgeb in 2002 to advise him that the children's trial placement in the Rothgeb home had failed due to inadequate supervision of the children and found Rothgeb reeking with the "odor of alcohol," a cold beer sitting on his truck's bumper, and the truck's bed "full of [beer] cans." "Risk for continued neglect is clear and extremely high," said the psychologist who examined Rothgeb in 2003, because "Rothgeb will comply with [DSS] directives only under close supervision and will revert to his preferred patterns as soon as scrutiny is over." "Rothgeb is ill equipped to deal with his children's special needs. Indeed, he would have considerable difficulty trying to parent children who are problem-free," concluded the psychologist.

After having the children in foster care three times, DSS finally reached the point where "we just felt we really needed permanency for these children, that [Rothgeb and his wife] had chances in the past and things had not been remedied." As a result, DSS changed its foster care plan goal from return home to adoption and began termination proceedings.

Upon hearing all the evidence, the circuit court found that the "level of the violence that these children are exposed to[,] which I have no doubt whatsoever originates in alcohol[,] is catastrophic." The court also concluded that Rothgeb doesn't "come anywhere near" the level of parental capacity needed to deal effectively with the children's "extremely demanding needs." These findings, coupled with the fact that the children had been doing "quite well" in foster care for "over sixty-five percent of the last five years," persuaded the circuit court by clear and convincing evidence that the petition for termination as recommended by the children's guardian *ad litem* should be granted. The circuit court entered orders terminating Rothgeb's residual parental rights under Code § 16.1-283(B) and 16.1-283(C)(2).

## II.

### A. Rehabilitative Services Under Code § 16.1-283(B) & (C)(2)

Rothgeb argues that the circuit court erred in terminating his residual parental rights under Code § 16.1-283(B) because any *prima facie* case for termination under subsection (B) was overcome by DSS's failure to provide rehabilitative services, and DSS failed to carry its burden of proving the factors listed in Code § 16.1-283(C)(2). Rothgeb argues separately that the circuit court erred in terminating his residual parental rights under Code § 16.1-283(C)(2) since DSS failed to provide rehabilitative services.

Rothgeb's argument fails on several levels. To begin with, Rothgeb does not take into account that subsections (B) and (C) provide "'individual bases upon which a petitioner may seek to terminate residual parental rights.'" Toms, 46 Va. App. at 269, 616 S.E.2d at 771 (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 563, 580 S.E.2d 463, 466 (2003)). Satisfactory proof under either subsection, standing alone, sustains a termination decision. See Toms, 46 Va. App. at 269, 616 S.E.2d at 771; Winslow, 40 Va. App. at 563, 580 S.E.2d at 466.

"Nothing in Code § 16.1-283 or the larger statutory scheme," moreover, requires that rehabilitative services "be provided in all cases as a prerequisite to termination under subsection B." Toms, 46 Va. App. at 268, 616 S.E.2d at 771. Subsection (B)(2) "does not create specific time frames" within which rehabilitative services must be provided to a parent, "nor does it mandate that a public or private agency provide any services to a parent after the child enters foster care." Id. at 269, 616 S.E.2d at 771 (internal quotation marks and citation omitted).

Thus, the only issue we must decide is whether sufficient facts support the circuit court's decision to terminate Rothgeb's parental rights under subsection (B). In answering that question, we presume the circuit court "thoroughly weighed all the evidence, considered the statutory

requirements, and made its determination based on the child's best interests." Fields v. Dinwiddie County Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005) (quoting Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990)). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Toms, 46 Va. App. at 266, 616 S.E.2d at 769 (quoting Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted)).

The facts of this case support the circuit court's decision to terminate Rothgeb's parental rights under Code § 16.1-283(B). Rothgeb's destructive pattern of alcohol abuse and domestic violence, added to his inability to meet the basic needs of his children, provided the circuit court with clear and convincing evidence that the "neglect or abuse" suffered by Rothgeb's children "presented a serious and substantial threat" to their life, health or development and made it "not reasonably likely" that the conditions which resulted in such neglect or abuse could be substantially corrected or eliminated so as to allow the children's safe return to Rothgeb within "a reasonable period of time." Code § 16.1-283(B). Given the evidence before it, the circuit court reasonably concluded that the best interests of the children would be served by the entry of the parental termination orders.

### B. FOSTER CARE PLAN APPROVING GOAL OF ADOPTION

Rothgeb also challenges the circuit court's orders approving DSS's foster care plan goal of adoption. Having found the court's termination orders supported by clear and convincing evidence, our analysis necessarily subsumes Rothgeb's challenge to the court's approval of DSS's adoption goal because "a preponderance-of-the-evidence standard governs judicial modifications of foster care plans." Toms, 46 Va. App. at 265 n.3, 616 S.E.2d at 769 n.3 (citing Richmond Dep't of Soc. Servs. v. Carter, 28 Va. App. 494, 497, 507 S.E.2d 87, 88 (1998)). Thus, this issue need not be addressed further.

III.

Because sufficient evidence supports the circuit court's factfinding and no error of law undermines its judgment, we affirm the circuit court's orders terminating Rothgeb's parental rights under Code § 16.1-283(B).

Affirmed.