COURT OF APPEALS OF VIRGINIA

Present:  Judges Kelsey, Petty and Senior Judge Bumgardner

JAMIE LYNN FOSTER

MEMORANDUM OPINION*

v.        Record No. 0469-08-2          PER CURIAM
                                                AUGUST 19, 2008

MADISON COUNTY DEPARTMENT
   OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF MADISON COUNTY
F. Ward Harkrader, Jr., Judge

(Pamela R. Johnson, on brief), for appellant.  Appellant submitting
on brief.

(Deborah S. Tinsley; Rose B. Emery, Guardian *ad litem* for the
infant child, on brief), for appellee.  Appellee and Guardian *ad
litem* submitting on brief.


Jamie Lynn Foster ("mother") contends the trial court erred in terminating her parental

rights to her minor child, J.C.  Mother argues the trial court erred by finding the evidence

sufficient to terminate her parental rights and to approve the goal of adoption.  For the reasons

stated herein, we affirm the trial court's decision.

Background

We view the evidence[1] in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax County Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

J.C. was born on July 10, 2003.  The Madison County Department of Social Services

(DSS) removed J.C. from his parents' custody on September 21, 2006 after both parents tested

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The facts are drawn from the Statement of Facts filed in lieu of a transcript pursuant to
Rule 5A:8.

positive for marijuana and cocaine. The juvenile and domestic relations district court (JDR court) found J.C. was abused and neglected on October 24, 2006, and approved the initial foster care service plan on December 8, 2006 with concurrent goals of relative placement and "return home." The service plan required mother to secure a safe and stable home suitable for a young child, maintain employment, participate in substance abuse treatment, cooperate with drug screening and providing needed documentation, and contribute to the child's support in accordance with court order. The stated deadline for achieving these goals was June 2007.

The JDR court reviewed the foster care service plan in May 2007. Mother did not attend the foster care service plan review hearing. At the time of the review, mother's whereabouts were "unknown." DSS scheduled seventeen visits between mother and J.C. prior to the hearing. Mother attended seven of these visits. She stopped visiting the child after January 25, 2007, noting in February 2007 it was "difficult" for her to visit. Mother later stated she could not visit because she might have been sent to jail and she needed to work in order to have money during her anticipated upcoming incarceration. Charges were pending against her for failure to appear and a sentencing order violation. Her financial status was "unknown." Social worker Randee Powell noted mother's driver's license had been suspended, and her cell phone service was "often" turned off. Powell observed both parents "continue[d] to need substance abuse treatment and improved parenting skills." She also stated that "neither parent presently has a home in which the child may live or [has] the financial ability to meet the child's basic needs."

Although DSS referred mother to substance abuse counseling, she did not attend. Furthermore, she did not attend Alcoholics Anonymous or Narcotics Anonymous meetings and did not document any drug screenings. She also failed to appear for her parenting sessions.

Meanwhile, DSS provided medical care to J.C. during his foster care placement for his asthma and dental decay. The medical professionals at the University of Virginia (UVA)

determined J.C. had special needs, and DSS transferred him to a therapeutic foster home. Specifically, the UVA professionals diagnosed J.C. with opposition defiant disorder and adjustment disorder with mixed emotion and conduct, and recommended further therapy.

On September 12, 2007, DSS filed a petition in JDR court to terminate mother's residual parental rights. That court held a hearing on October 12, 2007. At the time of the hearing, mother had had no contact with J.C. since January 25, 2007, and had not been in touch with DSS. The JDR court granted the petition and changed the goal of J.C.'s plan to adoption.

After the hearing, DSS learned that mother had been incarcerated on September 7, 2007. She remained incarcerated until January 15, 2008. Upon her release, mother called DSS to advise she was living with her grandparents and could not take care of the child. Mother suggested placing the child with her aunt, Penny Grimm. Grimm, who had first offered herself as a potential placement in September 2006, had repeatedly refused to provide the social security information necessary to initiate the placement process and had not cooperated with DSS in its attempts to arrange a home study.

The circuit court termination hearing was held on January 25, 2008. Leslie Cook testified that J.C. was placed initially with her and her husband, J.C.'s uncle. Cook stated that they administered nebulizer treatments to J. C. for his asthma at least twice daily and took him to medical and counseling appointments. After approximately one month, J.C. began having temper tantrums, threw and broke things, and began hitting and kicking. In February 2007, the Cooks requested a new placement for J.C.

Leslie Cook continued to have contact with J.C. after his relocation to a therapeutic foster care home and observed he seemed "very happy" with his placement. Cook noted she had observed mother use crack cocaine, and when J.C. visited the Cooks prior to his removal, they

did not know mother's whereabouts. Cook supported J.C.'s continued placement with his foster parents.

Jenny Conklen, J.C.'s case manager from August to October 2007, testified J.C. was treated during that time for oppositional defiant disorder, adjustment disorder, and ADHD. He took medications for his asthma, allergies, and ADHD. Conklen stated that J.C.'s foster home was a "level three" therapeutic foster care home which allowed for more intensive services and that J.C.'s behavior had improved between August and October.

Terry Martin, the caseworker assigned to J.C. from October 2007 until the termination hearing, visited J.C. weekly at his preschool. Martin stated J.C. was well-liked and well-behaved in school and "on target" academically. He received no special education services. Martin noted J.C. was happy at home and attached to his foster sister and foster mother, but had some physical aggression toward his foster brother and foster mother. Martin observed that J.C. responded well to a warm, loving, structured, and consistent environment and that J.C.'s foster parents were willing to adopt him.

Mother testified she had not been in touch with DSS because she had been "on the run" and wanted to use drugs. She acknowledged she did not plan for or support J.C. from March 2007 to September 2007. Mother admitted she had not completed substance abuse treatment, parenting classes, maintained contact with DSS or her child, or planned for J.C.'s future. At the time of the termination hearing, mother was working for a landscaping company with her fiancé "when needed" and was looking for additional employment and suitable housing. However, she stated she had financial stability and could provide for J.C. immediately.

While mother denied having a substance abuse problem and that DSS had asked her to document drug screenings, she stated she had attended approximately five substance abuse meetings upon her incarceration in September 2007. She testified she had not used drugs since

- 4 -

March 2007. Mother acknowledged she owed a "couple thousand" in court costs as well as restitution, but she did not know the amount of restitution. She continued to serve time on weekends and faced five years of supervised probation.

## Analysis

The trial court terminated mother's rights under subsections (1) and (2) to Code § 16.1-283(C). Code § 16.1-283(C) provides in pertinent part as follows:

> The residual parental rights of a parent or parents of a child placed in foster care as a result of court commitment . . . may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child, and that:
>
> (1) The parent or parents have, without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents to strengthen the parent-child relationship. Proof that the parent or parents have failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition, or
>
> (2) The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

When reviewing a decision to terminate parental rights, we presume the trial court "'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Fields v. Dinwiddie County Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005) (quoting Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990)). "The trial court's judgment, 'when based on evidence heard *ore tenus,* will not be disturbed on appeal unless plainly wrong or without evidence to

support it.'" Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 266, 616 S.E.2d 765, 769 (2005) (quoting Fields, 46 Va. App. at 7, 614 S.E.2d at 659). "In its capacity as a fact finder, therefore, the circuit court retains 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Id. (quoting Farley, 9 Va. App. at 328, 387 S.E.2d at 795).

Viewed in the light most favorable to DSS, the prevailing party below, Toms, 46 Va. App. at 262, 616 S.E.2d at 767, credible evidence supports the trial court's conclusion that, despite reasonable and appropriate efforts by DSS, mother failed to maintain continuing contact with, and provide or substantially plan for J.C.'s future for a period of six months after his placement in foster care and did not substantially remedy the conditions within twelve months of his removal the conditions leading to his placement. Mother admitted she did not maintain contact with J.C. from January 25, 2007 until the trial court hearing on January 25, 2008. She also acknowledged she failed to provide for or plan for J.C.'s future from March 2007 until her incarceration in September 2007. Mother's explanation for her failure to stay in touch with J.C. was that she was "on the run" and wanted to use drugs. Mother did not participate in the substance abuse counseling to which she was referred, failed to attend parenting classes, and did not secure stable housing and employment.

J.C., now five years old, suffers from asthma, allergies, ADHD, and psychological disorders which require special care and daily medication. His behavior has improved during his placement with his foster family, and he is doing well academically and socially at school. His foster parents have expressed a willingness to adopt him.

From this record, we cannot conclude the trial court was plainly wrong in finding that termination was in J.C.'s best interests, that mother had failed, without good cause, to maintain continuing contact with J.C. and to provide or substantially plan for his future over a six-month period. Likewise, the record supports the trial court's finding that mother failed, within twelve months of J.C.'s removal, "to remedy substantially the conditions which led to or required

- 6 -

continuation of [his] foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end." Thus, the evidence was sufficient to warrant termination of mother's residual parental rights under both subsections (1) and (2) of Code § 16.1-283(C).

Affirmed.