COURT OF APPEALS OF VIRGINIA


Present:    Chief Judge Felton, Judge Haley and Senior Judge Coleman


STEVE AUSTIN

                                                    MEMORANDUM OPINION*
v.      Record No. 0781-08-1                              PER CURIAM
                                                      SEPTEMBER 30, 2008
NEWPORT NEWS DEPARTMENT
   OF HUMAN SERVICES


            FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                             C. Peter Tench, Judge

            (Charles E. Haden, on brief), for appellant.

            (Lynn A. Sugg, Senior Assistant City Attorney; Holly A. White,
            Guardian *ad litem* for the minor children; White & White; on brief),
            for appellee.


        On March 26, 2008, the trial court terminated the residual parental rights of Steve Austin

(appellant), to his sons, C.W. and C.W-A., pursuant to Code § 16.1-283(C)(2).  On appeal,

appellant contends the evidence was insufficient to support the trial court's ruling.  Upon

reviewing the record and briefs of the parties, we conclude this appeal is without merit.

Accordingly, we summarily affirm the decision of the trial court.  See Rule 5A:27.

                                      FACTS

        On appeal, we view the evidence in the "'light most favorable' to the prevailing party in

the circuit court and grant to that party the benefit of 'all reasonable inferences fairly deducible

therefrom.'"  Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 262, 616 S.E.2d 765, 767

(2005) (quoting Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409

S.E.2d 460, 463 (1991)).

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

C.W. was born on October 7, 1997, and C.W-A. was born on April 29, 1999. Appellant, the boys' father, was not married to their mother.

On December 30, 2005, C.W. and C.W-A. were living temporarily in Newport News with Mary Austin (Austin), appellant's mother.[1] Austin contacted the Newport News Department of Human Services (DHS) and requested the children be removed from her care. Accordingly, DHS removed C.W. and C.W-A. from Austin's home and placed them in foster care.

DHS advised appellant in writing that to achieve reunification with his sons he was required to obtain safe and stable housing, provide financial resources to meet the children's needs, and improve family relationships and parenting skills. DHS offered appellant specific assistance to help him meet these goals.

Christina Riley, a parent support specialist for DHS, was in weekly contact with appellant from March to October 2006. Appellant did not complete or consistently attend the various parenting classes and counseling opportunities to which DHS referred him. Nor did appellant maintain steady employment. Riley referred appellant to a number of agencies for health care, but appellant did not follow through on these opportunities. DHS also gave appellant referrals relating to employment and housing. Riley consistently offered to supply appellant with needed transportation for service appointments. Not only did appellant not avail himself of the opportunities provided by DHS, he also was resistant to Riley's efforts to help him manage his finances in a responsible manner.

During his contacts with DHS, appellant acknowledged that he had been abusing substances by "sniffing drugs." DHS workers instructed appellant to obtain substance abuse

---

[1] A few days before, Austin had taken steps to evict appellant from her home because he was disruptive.

treatment. However, appellant did not make the appropriate contacts and obtain substance abuse treatment.

DHS arranged supervised visitation for the children with appellant and the children's mother. During the visitation sessions, appellant and the mother would get into altercations regarding the requirements of the foster service plans.[2] Eventually, after appellant and the mother consistently failed to appear at the DHS office for scheduled visitation, DHS had them agree to be present at the agency one hour before the time of the visits to avoid disappointment to the children.

Dr. Alan Rountree, a licensed clinical psychologist, began treating C.W. and C.W-A. in April 2006. At the time, C.W-A. was in kindergarten. He exhibited explosive and volatile behavior at school and in his foster home. He was angry and fearful. C.W.'s behavior difficulties were less severe than those of C.W-A. C.W. was easily upset and noncompliant with the requests of his foster parents. Both boys had been removed from their initial foster care placement due to their disruptive behavior.

C.W. and C.W-A. remained in the same foster home from March 2006 until the termination hearing on March 26, 2008. The behavior of both boys had stabilized, although C.W-A. continued to struggle at times. Both boys had a difficult time trusting adult caregivers. Dr. Rountree opined that removing the boys from their foster care placement would prove emotionally devastating for them. The boys' foster care parents are interested in adopting them.

On June 10, 2006, Dr. Natalia Boyd performed a psychological evaluation upon appellant. Boyd found that appellant exhibited features of narcissistic personality disorder and paranoid personality disorder. Appellant told Boyd that his life circumstances, particularly his

---

[2] Appellant had been arrested three times in relation to domestic disputes with the boys' mother.

lack of employment or appropriate housing, did not affect the children. Moreover, appellant took no responsibility for the children's welfare. Due to the anger appellant exhibited during the evaluation, Boyd recommended that appellant participate in individual therapy to address his stress and frustration and to improve parenting skills.

In June 2007, appellant stopped providing DHS information regarding his progress toward meeting the stated goals for reunification. Although appellant maintained he was working at Riverside Hospital, he did not provide DHS with verification of that employment. Nor did appellant provide any indication he had secured stable housing for himself and the children.

At the termination hearing, appellant testified that he had recently completed a parenting class. Appellant also expressed a desire to be reunited with C.W. and C.W-A. However, appellant acknowledged that he did not then have an appropriate place to live with his sons.

ANALYSIS

When reviewing a decision to terminate parental rights, we presume the circuit court "'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Toms, 46 Va. App. at 265-66, 616 S.E.2d at 769 (quoting Fields v. Dinwiddie County Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005)). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. at 266, 616 S.E.2d at 769 (quoting Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted)). "In its capacity as factfinder, therefore, the circuit court retains 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Id. (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)).

Appellant contends the evidence did not prove the circumstances required for termination of his parental rights pursuant to Code § 16.1-283(C)(2).  A termination pursuant to Code § 16.1-283(C)(2) requires the trial court to find by clear and convincing evidence that termination was in the child's best interests and

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

More than two years had passed between the boys' removal from Austin's home and the termination hearing.  The evidence proved that during that period of time appellant had made little to no progress toward achieving the goals necessary for reunification with his children.  Despite numerous referrals and offers of assistance from DHS, appellant had failed to complete the recommended treatment and counseling programs to help him address poor self-management and parenting issues.  Eventually, appellant had refused to cooperate with DHS by providing information concerning his progress.  Moreover, the evidence proved appellant had failed to maintain steady employment and he had no suitable place for his children to live.

We recognize that "'[t]he termination of [residual] parental rights is a grave, drastic and irreversible action.'"  Helen W. v. Fairfax County Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991) (quoting Lowe v. Dep't of Public Welfare of Richmond, 231 Va. 277, 280, 343 S.E.2d 70, 72 (1986)).  However, "[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities."  Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

In determining what is in the best interests of a child, this Court has stated:

> a court must evaluate and consider many factors, including the age and physical and mental condition of the child or children; the age and physical and mental condition of the parents; the relationship existing between each parent and each child; the needs of the child or children; the role which each parent has played, and will play in the future, in the upbringing and care of the child or children; and such other factors as are necessary in determining the best interests of the child or children.

Barkey v. Commonwealth, 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986).

C.W. and C.W-A. were ages nine and ten at the time of the termination hearing, and both had been in foster care for more than two years. Though they still exhibited emotional difficulties, both C.W. and C.W-A. had made progress while in foster care and in treatment with Rountree. Rountree opined that removal from their foster family, with whom the boys had an opportunity for adoption, would prove emotionally devastating to them. Thus, the evidence supports the trial court's decision that termination of appellant's parental rights was in the children's best interests.

CONCLUSION

Accordingly, we find appellant's appeal is without merit, and we summarily affirm the decision.

Affirmed.