COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Kelsey and Senior Judge Overton
Argued at Richmond, Virginia


EARLINE V. FIELDS

                                                                    OPINION BY
v.        Record No. 1716-04-2                      JUDGE NELSON T. OVERTON
                                                                    JUNE 21, 2005
DINWIDDIE COUNTY DEPARTMENT
 OF SOCIAL SERVICES


            FROM THE CIRCUIT COURT OF DINWIDDIE COUNTY
                            Thomas V. Warren, Judge

        George F. Marable, III, for appellant.

        Linwood T. Wells, III, Guardian *ad litem* for appellant.

        James H. Ritchie, Jr., for appellee.

        Adrienne George-Eliades (The Eliades Law Firm, P.L.L.C., on
        brief), Guardian *ad litem* for the minor child.


        On August 2, 2004, the trial court entered an order terminating the residual parental rights of

Earline V. Fields to her two-year-old son, T.R., pursuant to Code § 16.1-283(C)(2) and

16.1-283(E)(i).  On appeal, Fields contends the evidence was insufficient to support the termination

pursuant to Code § 16.1-283(C)(2).  Fields further argues the trial court erred in admitting hearsay

evidence in the form of letters written by mental health care providers John Fretheim and Dr. N.A.

Emiliani.  Finding no reversible error, we affirm the decision of the trial court.

                                            BACKGROUND

        We view the evidence in the light most favorable to the prevailing party below and grant to

it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax County Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

Two weeks before T.R.'s birth on July 15, 2002, Doretha Townes, a social worker with the Dinwiddie County Department of Social Services (DCDSS), was contacted by the staff of a local hospital regarding Fields. Townes went to the hospital and met Fields, who initially stated she did not know she was pregnant. Fields subsequently related her belief she had become pregnant from a tomato seed she had eaten in a can of spaghetti. Fields had been diagnosed with schizophrenia. At the time, Fields was living alone in a condemned house with no running water and only one working electrical outlet.

T.R. was removed from Fields' custody and placed in foster care immediately after his birth. At the termination hearing in 2004, Townes testified T.R. had remained with the same foster family since he left the hospital. T.R. had bonded with the foster family, had no mental health or physical problems, and was on target for his age. The foster family was willing to adopt T.R. if he was available for adoption.

Following T.R.'s removal from Fields' custody, DCDSS offered to help Fields find housing suitable for her and a baby, but she did not want to move from the area where she was living. DCDSS advised Fields to attend counseling sessions, parenting classes, find suitable housing, and take her daily medication for her mental illness. Fields attended one parenting workshop but refused parenting classes. Fields told Townes she took her medication when she thought she needed it, but not every day.

Following a period of hospitalization for psychiatric illness and a three-month stay in an adult home, Fields moved into the home of James Raines, T.R.'s biological father, in November of 2002.[1] Fields was permitted numerous supervised visits with T.R. in Raines' home. During the visits, Fields did not consistently handle or feed T.R. in a manner appropriate to the child's age,

---

[1] Raines initially stated he wanted T.R. to live with him and Fields so she could take care of the child and he would not have to pay child support. Eventually, however, Raines signed an agreement permanently surrendering his parental rights to T.R.

insisting on holding him and feeding him with a bottle when he had preferred to crawl about and drink from a cup. Fields habitually checked T.R.'s feet and shoes, claiming the child's feet were growing too fast as a result of improper feeding. Fields refused to get on the floor to play and interact with T.R. and often stared into space for long periods of time during T.R.'s visits. The child was never left alone with Fields for a significant period.

Fields also was permitted supervised visits with T.R. in neutral settings. Fields attended one supervised visit at a McDonald's restaurant, but refused to attend a visit at a Burger King because she did not like the food.

Townes continued to urge Fields to obtain mental health treatment. Fields insisted she did not need treatment and failed to attend scheduled counseling sessions. The foster care service plans produced by DCDSS indicated Fields has been diagnosed with "Schizophrenia, Chronic and Acute Exacerbation and Schizotypal Personality with idiosyncratic thinking," described as a "life long illness." Fields did not regularly attend sessions with Dr. Ramesh Koduri, her psychiatrist. According to one foster care service plan, Dr. Koduri had described Fields as "mentally ill, out of contact with reality." Dr. Koduri also stated Fields was "substantially unable to care for herself and may not be able to care for her child." Dr. Koduri had prescribed the medication Risperdal for Fields. Fields also was prescribed a monthly shot of Haldol, but she did not receive it on a regular basis. Fields was to receive treatment from Fretheim, a licensed clinical social worker. Fretheim reported to DCDSS Fields indicated she did not regularly take her medication nor attend scheduled appointments with him or Dr. Koduri. According to Townes, in the six months before the termination hearing Fields had made no specific efforts to attain the goals required of her by DCDSS.

Over Fields' hearsay objection, DCDSS introduced a letter from Fretheim dated March 2, 2004. The letter indicated that Fields had not been to Fretheim's office since August 18, 2003.

Fields had kept one appointment with Fretheim on July 3, 2003 and one with Dr. Koduri on August 18, 2003. During the appointment with Dr. Koduri, Fields said she took her medication only occasionally.[2]

DCDSS also introduced a letter dated May 9, 2003 from Dr. N.A. Emiliani. Dr. Emiliani conducted a psychiatric evaluation of Fields on April 24, 2003. Fields had sought out Dr. Emiliani because she was dissatisfied with Dr. Koduri's diagnosis. Dr. Emiliani diagnosed Fields with "Schizoaffective disorder/Bipolar Type" and prescribed the medication Risperdal. The letter indicated that on a follow-up visit to Dr. Emiliani, Fields continued to have "circumstantial thinking, impaired judgment and a great deal of difficulty in cognitive processing."

Testifying in her own behalf, Fields admitted that she had not attended parenting classes or consistently obtained mental health counseling. She knew she had been diagnosed with schizophrenia. She said she took her prescribed medication occasionally when she thought she needed it.[3] Fields testified she did not work and received disability payments because of a "hearing problem." She admitted she occasionally heard voices, but that it did not affect her. Fields further admitted that her other son, now an adult, was taken from her when he was six years old.

ANALYSIS

I.

Fields contends the evidence did not prove the circumstances required for termination of her parental rights pursuant to Code § 16.1-283(C)(2).[4] On review, "[a] trial court is presumed to have

---

[2] The trial court also admitted a letter dated May 19, 2003 from Fretheim to Townes. Neither Fields' brief, nor that of her guardian *ad litem*, contains any specific argument with regard to the admissibility of this letter. Therefore, we do not consider it. See Rule 5A:20(e).

[3] Fields said she had not taken any of her prescribed medication in the year 2004 because the medication made her feel she was "sizzling" and the drugs were "foaming" through her skin.

[4] Fields also contends DCDSS failed to prove it was not reasonably likely the conditions resulting in the abuse or neglect of her son could be substantially corrected or eliminated to

- 4 -

thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted).

A termination of rights pursuant to Code § 16.1-283(C)(2) requires the trial court to find by clear and convincing evidence that termination was in the child's best interests and

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

As noted above, in addition to basing its termination decision on Code § 16.1-283(C)(2), the trial court also ruled that Fields' parental rights should be terminated pursuant to Code § 16.1-283(E)(i). Like a termination under Code § 16.1-283(C)(2), a termination pursuant to Code § 16.1-283(E)(i) must be based upon clear and convincing evidence that the action is in the best interests of the child.[5] See Code § 16.1-283(E). In addition, the trial court must find the parent's rights to a sibling of the child previously had been terminated. See Code § 16.1-283(E)(i). Thus, under Code § 16.1-283(E)(i), the finding of the prior termination substitutes for a finding that the

---

permit his return to her within a reasonable period of time. Such proof is required for a termination pursuant to Code § 16.1-283(B)(2). Because the termination of Fields' parental rights was not based upon Code § 16.1-283(B)(2), we need not consider this argument.

[5] Indeed, clear and convincing evidence that the termination is in the child's best interests is a requirement in common to termination of parental rights under Code § 16.1-283(B), (C), (D), or (E). When considering termination of a parent's residual rights to a child, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

- 5 -

parent had failed to remedy the conditions leading to the child's foster care placement. Compare Code § 16.1-283(C) with Code § 16.1-283(E)(i).

Fields does not challenge the trial court's decision to terminate her rights pursuant to Code § 16.1-283(E)(i). This finding was supported by the evidence that Fields' other son, presently an adult, was taken from her when he was six years old. As discussed below, the record also demonstrates that termination of Fields' parental rights was in T.R.'s best interests. Therefore, we need not consider whether the evidence sufficiently supported a termination under Code § 16.1-283(C)(2).

II.

Fields contends the trial court erroneously admitted letters written by Fretheim and Dr. Emiliani because they constituted inadmissible hearsay evidence. Hearsay is defined as "an out-of-court statement offered to prove the truth of the matter asserted." Garcia v. Commonwealth, 21 Va. App. 445, 450, 464 S.E.2d 563, 565 (1995) (*en banc*). In order for hearsay to be admissible, it must "come within one of the many established exceptions to the general prohibition against admitting hearsay." Hanson v. Commonwealth, 14 Va. App. 173, 187, 416 S.E.2d 14, 22 (1992). "'[T]he party seeking to rely upon an exception to the hearsay rule has the burden of establishing admissibility.'" Braxton v. Commonwealth, 26 Va. App. 176, 183-84, 493 S.E.2d 688, 691 (1997) (quoting Neal v. Commonwealth, 15 Va. App. 416, 420-21, 425 S.E.2d 521, 524 (1992)).

The only conceivable purpose for the admission of the writings of Fretheim and Dr. Emiliani was to prove the matters asserted therein, namely that Fields had been diagnosed with schizophrenia yet refused regularly to receive medical treatment or take medications to control the illness. DCDSS advances no exception to the hearsay rule, and we are aware of none, which would permit the admission into evidence of Fretheim's and Dr. Emiliani's letters.

However, even if the admission of the letters was error, we need not necessarily reverse the trial court's decision to terminate Fields' parental rights. "[E]rror which does not injuriously affect the interest of the party complaining is not reversible." Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1186, 409 S.E.2d 16, 21 (1991). See Code § 8.01-678.

Regarding the elements of proof required for a termination pursuant to Code § 16.1-283(E)(i), the writings of Fretheim and Dr. Emiliani related only to whether termination of Fields' parental rights was in T.R.'s best interests. This Court has stated:

> In determining what is in the best interests of the child, a court must evaluate and consider many factors, including the age and physical and mental condition of the child or children; the age and physical and mental condition of the parents; the relationship existing between each parent and each child; the needs of the child or children; the role which each parent has played, and will play in the future, in the upbringing and care of the child or children; and such other factors as are necessary in determining the best interests of the child or children.

Barkey v. Commonwealth, 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986).

Excluding any hearsay evidence the trial court may have admitted erroneously, DCDSS nonetheless proved by clear and convincing evidence that termination was in T.R.'s best interests. Two-year-old T.R. had been cared for by his foster family since he left the hospital following birth. He had never lived with Fields or spent significant time with her alone. At the time of the termination hearing, T.R. was thriving in every way. He had bonded with the foster family, which was willing to adopt him.

Although Fields had remedied the conditions under which she was living when T.R. was born, she remained unwilling to accept her mental illness and obtain the treatment and medication that might permit her to parent T.R. successfully. By her own admission, Fields did not believe she needed mental health treatment despite her "hearing problem." Nor had Fields demonstrated an ability to bond with T.R. or recognize that his needs changed as he developed.

No meaningful relationship had been established between T.R. and Raines, with whom Fields lived. Raines, in fact, had voluntarily surrendered his parental rights to T.R.

Moreover, "[e]ven though testimony is objectionable as hearsay, its admission is harmless error when the content of the extra-judicial declaration is clearly established by other competent evidence." Schindel v. Commonwealth, 219 Va. 814, 817, 252 S.E.2d 302, 304 (1979). The foster care service plans introduced by DCDSS proved Fields had been diagnosed with schizophrenia but she did not consistently take medication to control the illness or seek therapy. Pursuant to Code § 16.1-281, DCDSS was required to prepare and present to the trial court a foster care service plan including the reasons supporting the conclusion T.R. could not be returned to Fields. See Code § 16.1-281. In addition, at the termination hearing Fields acknowledged her diagnosis of mental illness and that she did not take her medication regularly.

We recognize that "'[t]he termination of [residual] parental rights is a grave, drastic and irreversible action.'" Helen W. v. Fairfax County Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991) (citation omitted). However, "[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

We find the admissible evidence proved, clearly and convincingly, that termination of Fields' parental rights was in T.R.'s best interests. Accordingly, we affirm the decision of the trial court.

Affirmed.