COURT OF APPEALS OF VIRGINIA

Present:    Judges Frank, Petty and Senior Judge Willis
Argued at Chesapeake, Virginia


CHRISTOPHER L. LUCIANO

v.        Record No. 1462-06-1

CITY OF HAMPTON DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION* BY
JUDGE JERE M.H. WILLIS, JR.
APRIL 24, 2007


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Wilford Taylor, Jr., Judge

Stephen J. Weisbrod for appellant.

Rachel Allen, Assistant City Attorney, for appellee.

Charles E. Haden, Guardian *ad litem* for the minor child.


On appeal from the termination of his residual parental rights with respect to his son, M.,

Christopher L. Luciano contends that the evidence was insufficient to support the trial court's

decision and that he "substantially complied with all the orders of the court." We affirm the

judgment of the trial court.

Background

On June 2, 2000, the Hampton Juvenile and Domestic Relations District Court ("juvenile

court") awarded legal custody of M. to his mother, Elizabeth Anderson, reserving to Luciano the

right of visitation.[1] On June 10, 2004, following receipt of a court-ordered parental capacity

evaluation and "concerns [about] the parent's ability to care for [M.] appropriately," the juvenile

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] M. was born on November 29, 1999. He was four and one-half years old when he came
under the care of DSS in 2004 and six and one-half years old at the time of the *de novo* hearing.

court removed M. from Anderson's custody and placed him in the custody of the City of Hampton Department of Social Services ("DSS"). The juvenile court placed M. in a foster home with an initial foster care review plan goal of "Return to Parent." The Foster Care Service Plan dated July 23, 2004, listed several responsibilities and requirements for Luciano, including maintaining contact with DSS and demonstrating the ability to parent M. appropriately and to provide a safe, stable, and suitable living environment.

The Foster Care Service Plan Review prepared on January 10, 2005, noted that Luciano "has not made any efforts to change his current living arrangement to allow placement of [M.] with him." At that time, Luciano lived with his great-uncle, David Credle, who was a registered sex offender. The January 10, 2005 Foster Care Service Plan Review included the prior requirements from the 2004 Plan and further required Luciano to demonstrate financial ability to meet M.'s needs, to commit to reunification, to successfully complete a parenting class through a designated agency and to obtain and participate in psychotherapy and psychiatric services.

On March 8, 2005, after learning through DSS that M. had accused Anderson and her present husband of physically and sexually abusing him prior to his placement in foster care, the juvenile court changed the foster plan goal from return home to adoption and directed DSS to file an amended plan consistent with that goal. On July 21, 2005, DSS did so and petitioned to terminate Luciano's parental rights.

On August 10, 2005, the juvenile court entered an order terminating Luciano's residual parental rights.

Luciano appealed to the trial court, which heard the case *de novo* on March 16, March 21, and April 17, 2006. At that hearing, DSS worker Erica Browning testified that M. is a special needs child. He requires special attention at school due to his aggression, and he cannot function in a normal setting. He has been identified as developmentally delayed and receives special education

- 2 -

services. He was born with a heart condition for which he receives treatment. His doctors were currently assessing whether he suffers from bipolar disorder. Browning testified that Luciano had failed to complete, timely or satisfactorily, the goals and requirements set forth in the foster care plans. He still lived with his great-uncle, a registered sex offender. He had failed to provide safe and appropriate housing. He failed to see anything wrong with having a sex offender in the house with M. He refused to meet with a unification specialist DSS had assigned to work with the parents. Browning testified that she did not believe Luciano understood or could meet M.'s special needs. She noted that Luciano himself had mental health issues. Browning testified that she rarely spoke with Luciano directly. All communications were through his grandmother. He never contacted Browning directly as required by the foster care plan. Moreover, he was not employed at the time of the *de novo* hearing. Browning testified that "throughout the history of the case" Luciano would be employed, then unemployed, but he would not contact Browning to update her as to his employment status. The court-ordered parental capacity evaluation reported that Luciano needed long-term, ongoing individual psychotherapy. He delayed completing a parenting class, telling Browning he had taken one a year earlier. On the day of the hearing, Luciano provided Browning with a certificate of completion. During supervised visitation, Luciano did not demonstrate the parenting skills he should have acquired in parenting class. He failed to complete a required anger management class. He told Browning he had completed an anger management class in 1996 or 1997 and did not see why he should have to take another one.

Dr. Jane Hollingsworth, a licensed clinical psychologist with Children's Hospital of the Kings Daughter ("CHKD"), performed a psychological examination of Luciano. Dr. Hollingsworth reported that Luciano had suffered extensive abuse as a child and had recently attempted to commit suicide. She testified that he is emotionally immature and has trouble delaying gratification and controlling his impulses. She testified that "[t]here was a lot of rage, a lot of anger that he didn't

- 3 -

have the coping skills to deal with. There was some narcissism. By narcissism, I mean he was very self-focused." She testified that he exhibits signs of dependency, "his thinking becomes disorganized and he has trouble coping with his feelings." She testified that he has difficulty controlling his temper. On the "Child Abuse Potential Inventory," he "was very defensive." Dr. Hollingsworth discarded the test because "[h]e elevated the Lie index and the Faking Good Index." Dr. Hollingsworth and her staff recommended that Luciano remain in therapy, continue psychiatric care, complete his anger management course and apply the techniques he learned. At the time of the test, he had problems with anger. Dr. Hollingsworth opined that he was not capable of assuming custody of M. because of his emotional instability and his inability to appreciate the risks inherent in having M. in contact with his great-uncle, a registered sex offender.

Richard Tumblin testified that he is a licensed certified social worker to whom Luciano "was referred to [at CHKD] following allegations that he physically abused M. and a request was made for us to evaluate his parenting capacity." Tumblin reported that Luciano has a history of problems with anger and is experiencing depression and possibly post-traumatic stress syndrome. Tumblin had two primary concerns: (1) Luciano's history of anger; and (2) whether Luciano could independently care for a child. He recommended that Luciano continue therapy and psychiatric care.

The guardian *ad litem* recommended that the trial court terminate Luciano's parental rights. The trial court approved the goal of adoption and terminated Luciano's parental rights.

### Analysis

When reviewing a decision to terminate parental rights, we presume the trial court "'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 265-66, 616 S.E.2d 765, 769 (2005) (quoting Fields v. Dinwiddie County Dep't of

Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005)). "In its capacity as factfinder . . . the circuit court retains 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Id. at 266, 616 S.E.2d at 769 (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 794 (1990)).

"The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. (quoting Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)). Furthermore, the evidence is viewed in the light most favorable to the party prevailing below, and its evidence is afforded all reasonable inferences fairly deducible therefrom. Farley, 9 Va. App. at 328, 387 S.E.2d at 795.

Luciano argues that the trial court's decision to terminate his parental rights was "arbitrary and capricious" and that he substantially complied with the requirements set forth by the foster care plan.

Code § 16.1-283(C)(2), under which the trial court terminated father's parental rights, requires clear and convincing evidence that termination is in the best interests of the child and that

> the parent . . . without good cause, ha[s] been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Viewed in the light most favorable to the party prevailing below, Logan, 13 Va. App. at 128, 409 S.E.2d at 463, credible evidence supports the trial court's decision to terminate Luciano's rights under Code § 16.1-283(C)(2). The evidence sufficiently proved that he was unwilling or unable within a reasonable period of time to remedy substantially the conditions

causing M. to be placed in DSS custody. He failed to participate in and/or complete programs and services offered by DSS. He never found safe housing for M. He was unemployed. He did not maintain contact with DSS. He had difficulty managing his anger. He was unstable as reflected by his recent attempt to commit suicide. He suffered from mental conditions requiring treatment and management.

The record supports the trial court's finding that DSS presented clear and convincing evidence satisfying the statutory requirements of Code § 16.1-283(C)(2) and establishing that termination of Luciano's residual parental rights was in M.'s best interests. Accordingly, we affirm the judgment of the trial court.

<u>Affirmed.</u>