COURT OF APPEALS OF VIRGINIA


Present:   Judges McClanahan, Haley and Senior Judge Willis


TONYA ANNETTE TAYLOR

                                                    MEMORANDUM OPINION*
v.      Record No. 0700-10-3                            PER CURIAM
                                                      DECEMBER 7, 2010
CITY OF ROANOKE DEPARTMENT
   OF SOCIAL SERVICES


                FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                             Jonathan M. Apgar, Judge

          (L. Brad Braford, on brief), for appellant.  Appellant submitting on
          brief.

          (William M. Hackworth, City Attorney; Heather P. Ferguson,
          Assistant City Attorney; Lora A. Keller, Guardian *ad litem* for the
          minor children, on brief), for appellee.  Appellee and Guardian
          *ad litem* submitting on brief.


        On March 18, 2010, the trial court entered an order terminating the parental rights of

Tonya Annette Taylor (appellant) to her son, D.T., and daughter, L.T., pursuant to Code

§ 16.1-283(B) and 16.1-283(C)(2).  On appeal, appellant contends the evidence was insufficient to

support the termination.  Finding no error, we affirm the trial court's decision.

                                      BACKGROUND

        On appeal, we view the evidence in the "'light most favorable' to the prevailing party in

the circuit court and grant to that party the benefit of 'all reasonable inferences fairly deducible

therefrom.'"  Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 262, 616 S.E.2d 765, 767

(2005) (quoting Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409

S.E.2d 460, 463 (1991)).

        ───────────────────

            * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

D.T. was born to appellant and her husband, Roman Lee Taylor (Taylor), on March 26, 2001. L.T. was born to appellant and Taylor on October 1, 2004.

The City of Roanoke Department of Social Services (DSS) had contact with appellant's family regarding a report of physical abuse of D.T. by Taylor on December 4, 2006. Angela Mitchell, a DSS social worker, then met with appellant and Taylor on February 23, 2007 to assess the family situation. Taylor reported having a history of anger management issues, depression, borderline schizophrenia, and ADHD. Taylor admitted that he used marijuana and that D.T. had witnessed him viewing pornography. Appellant reported major depression, post-traumatic stress disorder, panic attacks, and anxiety disorder. Appellant also had been diagnosed with diabetes. DSS developed a service plan that included a variety of therapeutic services for appellant, Taylor, and the children. Appellant and Taylor, however, declined the services offered by DSS.

On June 5, 2007, the juvenile and domestic relations district court entered a protective order requiring appellant and Taylor to cooperate with the services offered by DSS. Afterward, appellant and Taylor completed psychological evaluations and permitted therapy in the home.

D.T. was diagnosed with ADHD, oppositional defiant disorder, reactive attachment disorder, and post-traumatic stress disorder. D.T. suffered from violent outbursts during which he was aggressive and harmed himself. L.T. had been diagnosed with asthma and had behavioral issues involving protracted temper tantrums.

Through therapy from June to October 2007, D.T.'s behavior showed signs of improvement. However, the therapy was terminated abruptly because Taylor threatened Mitchell and the therapist while they were in appellant and Taylor's home.

During her visitations to the home, Mitchell found it to be foul smelling and infested by rodents. There were holes in the structure D.T. had caused during his violent outbursts. Taylor

reported that D.T. had made holes in his mattress with a knife. During Mitchell's visits, L.T. usually wore nothing but a large t-shirt.

In 2006 and 2007, there were two founded complaints of child abuse and neglect against Taylor. Appellant also had a founded complaint of child abuse and neglect.

During a psychological evaluation completed in August 2007, appellant stated that D.T. was "mischievous, evil, and mean" and that he "had to be whooped" because it was the only punishment he understood. Appellant refused to acknowledge that there were any problematic behaviors in the home and denied a history of domestic violence in the family. The evaluator concluded that appellant's significant level of depression and her dependent personality style negatively impacted her ability to provide her children with the protection they required from their father's aggressive and violent tendencies.

Pursuant to an emergency protective order, D.T. and L.T. were removed from the home on October 10, 2007 because of Taylor's continued physical abuse of the children, his refusal to participate in services, and his substance abuse. The removal was further based upon the children's behavioral issues and appellant's inability to protect them from abuse and neglect.

The foster care plan approved on December 20, 2007 required both appellant and Taylor to obtain treatment from a psychiatrist, obtain appropriate medications for their depression and mental health conditions, and complete marriage counseling. They were required to attend individual therapy, parenting classes, and anger management classes. Appellant was to complete substance abuse screening and maintain her health. Appellant and Taylor also were expected to maintain stable employment and suitable housing.

Appellant and Taylor were referred to Tony Leger for individual and marital counseling in 2008. Neither appellant nor Taylor completed individual counseling. They did not begin marital

counseling until July 2009, after the termination proceedings began. Appellant and Taylor did not obtain psychiatric care.

Appellant and Taylor were offered biweekly supervised visitation with D.T. and L.T. D.T. often began the visits by kicking or punching Taylor. During the visits, appellant appeared distant and frequently would not participate in play with the children. Both D.T. and L.T. exhibited severe behavioral reactions to visits with appellant and Taylor. In April 2009, D.T.'s visitation with appellant and Taylor was suspended because of his troubling behavior before and after the visits. Visitation between L.T. and her parents likewise was suspended temporarily due to her lengthy temper tantrums. Once visitation resumed between L.T. and her parents in July 2009, her violent behavior began to escalate again.

In August 2008, appellant and Taylor moved out of their home because the utilities had been disconnected. They moved in with appellant's mother. Subsequently, appellant and Taylor twice obtained an apartment of their own, but were unable to pay the rent and were forced to return to the residence of appellant's mother. The home was small and could not accommodate D.T. and L.T.

At the time of the termination hearing on December 16, 2009, appellant had been unemployed for several months. She was fired from her last job at Bojangles because her cash register came up short. Appellant had failed to complete domestic violence counseling to which she was referred. However, she did complete a series of parenting classes.

Wesley Bell, the DSS social worker who was assigned to the matter in June 2008, concluded that both D.T. and L.T. require "an extremely high level of stability and structure in their lives in order to be successful" and that they were receiving that stability in their foster homes. D.T. had been assigned a behavioral specialist at school to keep him properly engaged and was having more success at school. Nonetheless, D.T. had been hospitalized twice for homicidal and suicidal

ideations. L.T.'s behavior had improved dramatically while she was in foster care. She has adjusted well to her foster home, which provides her with a structured environment.

Appellant testified that she was willing to see a psychiatrist, but she had been unable to find one to treat her. She said she was willing to separate from her husband if it would mean that she could be reunited with her children. Appellant denied that Taylor had ever abused the children or that there had been domestic violence in the household. The parties stipulated that D.T. had expressed his desire to return home to appellant and Taylor.

ANALYSIS

Appellant argues that DSS did not prove by clear and convincing evidence the factors required for termination under Code § 16.1-283(B) and 16.1-283(C)(2). Subsections (B) and (C)(2) of Code § 16.1-283 provide "'individual bases upon which a petitioner may seek to terminate residual parental rights.'" Toms, 46 Va. App. at 269, 616 S.E.2d at 771 (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 563, 580 S.E.2d 463, 466 (2003)). Satisfactory proof under either subsection, standing alone, sustains a termination decision. See Fields v. Dinwiddie County Dep't of Soc. Servs., 46 Va. App. 1, 8, 614 S.E.2d 656, 659 (2005).

In determining whether the evidence was sufficient to support a termination, we presume the trial court "'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Id. at 7, 614 S.E.2d at 659 (quoting Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990)). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. (quoting Logan, 13 Va. App. at 128, 409 S.E.2d at 463). In its capacity as fact finder, therefore, the circuit court retains "broad discretion in making the decisions necessary to guard and to foster a child's best interests." Farley, 9 Va. App. at 328, 387 S.E.2d at 795.

Termination pursuant to Code § 16.1-283(C)(2) requires proof, by clear and convincing evidence, that termination is in the child's best interests and the parent, "without good cause, ha[s] been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement," notwithstanding reasonable and appropriate efforts of services agencies.

The evidence, viewed in the light most favorable to DSS, was clear and convincing that appellant, without good cause, failed "to substantially remedy" the conditions which led to or required continuation of the children's foster care placement within a reasonable period of time. One reason D.T. and L.T. were removed from the home in October 2007 was the concern that appellant could not protect the children from the violent situation present in the home. At no point thereafter did appellant acknowledge that Taylor, with whom she continued to live at the time of the termination hearing in December 2009, posed a threat to D.T. and L.T. Appellant had not maintained employment or obtained a suitable residence for the children. Although appellant had completed parenting classes, she had failed to obtain individual counseling or domestic violence counseling, as DSS had required.

In determining what is in the best interests of a child, this Court has stated:

> a court must evaluate and consider many factors, including the age and physical and mental condition of the child or children; the age and physical and mental condition of the parents; the relationship existing between each parent and each child; the needs of the child or children; the role which each parent has played, and will play in the future, in the upbringing and care of the child or children; and such other factors as are necessary in determining the best interests of the child or children.

Barkey v. Commonwealth, 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986).

The special needs of D.T. and L.T. require that they be placed in a structured environment like that found in their foster homes. Moreover, D.T. and L.T.'s continued contact

with their parents clearly was detrimental to their progress in managing their behavioral issues. Notwithstanding D.T.'s stated desire to return home to appellant, the record supports the trial court's conclusion that termination of appellant's parental rights was in the best interests of the children.

Considering all the facts and circumstances, there was clear and convincing evidence to prove the factors required for termination of appellant's parental rights pursuant to Code § 16.1-283(C)(2). In light of this conclusion, we need not consider whether the evidence was sufficient to support a termination under Code § 16.1-283(B). See Fields, 46 Va. App. at 8, 614 S.E.2d at 659.

CONCLUSION

For the foregoing reasons, we affirm the decision of the trial court.

Affirmed.