COURT OF APPEALS OF VIRGINIA


Present:   Judges McClanahan, Haley and Senior Judge Willis


ROMAN LEE TAYLOR

                                                    MEMORANDUM OPINION[*]
v.        Record No. 0672-10-3                           PER CURIAM
                                                    DECEMBER 7, 2010
CITY OF ROANOKE DEPARTMENT
  OF SOCIAL SERVICES


            FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                        Jonathan M. Apgar, Judge

            (David W. Steidle, on brief), for appellant.  Appellant submitting on
            brief.

            (William M. Hackworth, City Attorney; Heather P. Ferguson,
            Assistant City Attorney; Lora A. Keller, Guardian *ad litem* for the
            minor children, on brief), for appellee.  Appellee and Guardian
            *ad litem* submitting on brief.


        On March 18, 2010, the trial court entered an order terminating the parental rights of

Roman Lee Taylor (appellant) to his son, D.T., and daughter, L.T., pursuant to Code

§ 16.1-283(B) and 16.1-283(C)(2).  On appeal, appellant contends the evidence was insufficient to

support the termination.  Finding no error, we affirm the trial court's decision.

                                    BACKGROUND

        On appeal, we view the evidence in the "'light most favorable' to the prevailing party in

the circuit court and grant to that party the benefit of 'all reasonable inferences fairly deducible

therefrom.'" Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 262, 616 S.E.2d 765, 767

(2005) (quoting Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409

S.E.2d 460, 463 (1991)).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

D.T. was born to appellant and his wife, Tonya Annette Taylor (Taylor), on March 26, 2001. L.T. was born to appellant and Taylor on October 1, 2004.

The City of Roanoke Department of Social Services (DSS) had contact with appellant's family regarding a report of physical abuse of D.T. by appellant on December 4, 2006. Angela Mitchell, a DSS social worker, then met with appellant and Taylor on February 23, 2007 to assess the family situation. Appellant reported having a history of anger management issues, depression, borderline schizophrenia, and ADHD. Appellant was on medications for these conditions, but he sometimes did not take the drugs as prescribed. Appellant admitted that he used marijuana and that D.T. had witnessed him viewing pornography. Taylor reported major depression, post-traumatic stress disorder, panic attacks, and anxiety disorder. Taylor also had been diagnosed with diabetes. DSS developed a service plan that included a variety of therapeutic services for appellant, Taylor, and the children. Appellant and Taylor, however, declined the services offered by DSS.

On June 5, 2007, the juvenile and domestic relations district court entered a protective order requiring appellant and Taylor to cooperate with the services offered by DSS. Afterward, appellant and Taylor completed psychological evaluations and permitted therapy in the home.

D.T. was diagnosed with ADHD, oppositional defiant disorder, reactive attachment disorder, and post-traumatic stress disorder. D.T. suffered from violent outbursts during which he was aggressive and harmed himself. L.T. had been diagnosed with asthma and had behavioral issues involving protracted temper tantrums.

Through therapy from June to October 2007, D.T.'s behavior showed signs of improvement. However, the therapy was terminated abruptly because appellant threatened Mitchell and the therapist while they were in appellant and Taylor's home.

During her visitations to the home, Mitchell found it to be foul smelling and infested by rodents. There were holes in the structure D.T. had caused during his violent outbursts. Appellant

reported that D.T. had made holes in his mattress with a knife. During Mitchell's visits, L.T. usually wore nothing but a large t-shirt.

In 2006 and 2007, there were two founded complaints of child abuse and neglect against appellant. Taylor also had a founded complaint of child abuse and neglect. Appellant attended only two sessions of the domestic violence prevention program he was required to complete and was discharged from psychiatric treatment for failing to appear at appointments.

During a psychological evaluation completed in July 2007, appellant acknowledged his history of explosive and violent behavior in the home. Appellant said he used marijuana several times a week because his medications did not provide a calming effect. Appellant expressed resentment of D.T. and the problems he had caused in the home. The evaluator concluded that appellant was not interested in parenting the children effectively and providing them with a safe environment, nor was he capable of doing so.

Pursuant to an emergency protective order, D.T. and L.T. were removed from the home on October 10, 2007 because of appellant's continued physical abuse of the children, his refusal to participate in services, and his substance abuse. The removal was further based upon the children's behavioral issues and Taylor's inability to protect them from abuse and neglect.

The foster care plan approved on December 20, 2007 required both appellant and Taylor to obtain treatment from a psychiatrist, obtain appropriate medications for their depression and mental health conditions, and complete marriage counseling. They were required to attend individual therapy, parenting classes, and anger management classes. Appellant was to complete substance abuse treatment. Appellant and Taylor also were expected to maintain stable employment and suitable housing.

Appellant and Taylor were referred to Tony Leger for individual and marital counseling in 2008. Neither appellant nor Taylor completed individual counseling. They did not begin marital

counseling until July 2009, after the termination proceedings began. Appellant and Taylor did not obtain psychiatric care.

Appellant and Taylor were offered biweekly supervised visitation with D.T. and L.T. D.T. often began the visits by kicking or punching appellant. Appellant would sometimes interrupt the sessions by discussing matters with the social worker rather than interacting with the children. Both D.T. and L.T. exhibited severe behavioral reactions to visits with appellant and Taylor. In April 2009, D.T.'s visitation with appellant and Taylor was suspended because of his troubling behavior before and after the visits. Visitation between L.T. and her parents likewise was suspended temporarily due to her lengthy temper tantrums. Once visitation resumed between L.T. and her parents in July 2009, her violent behavior began to escalate again.

In August 2008, appellant and Taylor moved out of their home because the utilities had been disconnected. They moved in with Taylor's mother. Subsequently, appellant and Taylor twice obtained an apartment of their own, but were unable to pay the rent and were forced to return to the residence of Taylor's mother. The home was small and could not accommodate D.T. and L.T.

Appellant's work history was sporadic. He was unemployed from June 2008 to July 2009, when he began working at Taco Bell. He was fired the following month when his cash register came up short. At the time of the termination hearing on December 16, 2009, appellant still had not found another job.

Appellant failed drug screenings on several occasions and sometimes refused to submit to drug testing because he knew the result would be positive for marijuana. Appellant could not produce a urine sample in October 2009, which was considered a positive screening. Appellant did not obtain treatment for substance abuse.

Wesley Bell, the DSS social worker who was assigned to the matter in June 2008, concluded that both D.T. and L.T. require "an extremely high level of stability and structure in their

lives in order to be successful" and that they were receiving that stability in their foster homes. D.T. had been assigned a behavioral specialist at school to keep him properly engaged and was having more success at school. Nonetheless, D.T. had been hospitalized twice for homicidal and suicidal ideations. L.T.'s behavior had improved dramatically while she was in foster care. She has adjusted well to her foster home, which provides her with a structured environment.

Appellant testified that he had completed an eighteen-week program on domestic violence alternatives. Appellant admitted he had spanked D.T., but did not consider his actions to be abuse because the child sustained no physical harm. The parties stipulated that D.T. had expressed his desire to return home to appellant and Taylor.

ANALYSIS

Appellant argues that DSS did not prove by clear and convincing evidence the factors required for termination under Code § 16.1-283(B) and 16.1-283(C)(2). Subsections (B) and (C)(2) of Code § 16.1-283 provide "'individual bases upon which a petitioner may seek to terminate residual parental rights.'" Toms, 46 Va. App. at 269, 616 S.E.2d at 771 (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 563, 580 S.E.2d 463, 466 (2003)). Satisfactory proof under either subsection, standing alone, sustains a termination decision. See Fields v. Dinwiddie County Dep't of Soc. Servs., 46 Va. App. 1, 8, 614 S.E.2d 656, 659 (2005).

In determining whether the evidence was sufficient to support a termination, we presume the trial court "'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Id. at 7, 614 S.E.2d at 659 (quoting Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990)). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. (quoting Logan, 13 Va. App. at 128, 409 S.E.2d at 463). In its capacity as fact finder, therefore, the circuit court retains "broad discretion in making the

decisions necessary to guard and to foster a child's best interests." Farley, 9 Va. App. at 328, 387 S.E.2d at 795.

Under Code § 16.1-283(B), the parental rights of parents of neglected or abused children may be terminated if the court finds by clear and convincing evidence that termination is in the best interests of the children and that:

> 1.  The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2.  It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time.  In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

Code § 16.1-283(B) further provides that proof that the parent, "without good cause, ha[s] not responded to or followed through with appropriate, available and reasonable rehabilitative efforts" on the part of an agency such as DSS "to reduce, eliminate or prevent the neglect or abuse of the child" is prima facie evidence of the condition set forth in Code § 16.1-283(B)(2).

The evidence, viewed in the light most favorable to DSS, was clear and convincing that the conditions resulting in the neglect or abuse of the children have not been eliminated in the two years they have been removed from appellant's household.  DSS began offering services to appellant and Taylor to assist their family in early 2007.  Appellant and Taylor refused the services offered by DSS and permitted therapy only after a protective order was entered.  The therapy ended, however, because appellant threatened to harm the social worker and the therapist.

D.T. and L.T. were removed from the home in October 2007 following founded complaints against appellant of physical neglect and abuse.  Appellant acknowledged that he

used violence in the household against the children, but did not view his actions as abuse. Appellant refused to admit that his own actions were the source of the family's problems, blaming D.T.'s behavior instead.

At the time of the termination hearing, appellant had failed to follow through with the requirements of the foster service plan. Appellant had not completed individual counseling or obtained psychiatric care. Nor had appellant been treated for substance abuse. Appellant had continued to use marijuana, despite the fact that his substance abuse was one basis for the children's removal. Moreover, appellant failed to maintain employment or provide suitable housing for the family.

In determining what is in the best interests of a child, this Court has stated:

> a court must evaluate and consider many factors, including the age and physical and mental condition of the child or children; the age and physical and mental condition of the parents; the relationship existing between each parent and each child; the needs of the child or children; the role which each parent has played, and will play in the future, in the upbringing and care of the child or children; and such other factors as are necessary in determining the best interests of the child or children.

Barkey v. Commonwealth, 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986).

The special needs of D.T. and L.T. require that they be placed in a structured environment. Moreover, D.T. and L.T.'s continued contact with their parents clearly was detrimental to their progress in managing their behavioral issues. Notwithstanding D.T.'s stated desire to return home to appellant, the record supports the trial court's conclusion that termination of appellant's parental rights was in the best interests of the children.

Considering all the facts and circumstances, there was clear and convincing evidence to prove the factors required for termination of appellant's parental rights pursuant to Code

§ 16.1-283(B). [1]  In light of this conclusion, we need not consider whether the evidence was

sufficient to support a termination under Code § 16.1-283(C)(2).  See Fields, 46 Va. App. at 8,

614 S.E.2d at 659.

CONCLUSION

For the foregoing reasons, we affirm the decision of the trial court.

Affirmed.

---

[1] Appellant also challenges the approval of the foster care plan with the goal of adoption rather than returning the children home.  However, as we conclude that the basis for the termination was proven by clear and convincing evidence, our analysis necessarily subsumes appellant's challenge to the trial court's approval of DSS's goal of adoption because "a preponderance-of-the-evidence standard governs judicial modification of foster care plans." Toms, 46 Va. App. at 265 n.3, 616 S.E.2d at 769 n.3.  Thus, this issue need not be addressed further.