COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Humphreys, O'Brien and Senior Judge Bumgardner

WILLIAM A. WOODARD, JR.

v.      Record No. 0319-15-2

DINWIDDIE DEPARTMENT OF
 SOCIAL SERVICES

MEMORANDUM OPINION*
PER CURIAM
JUNE 16, 2015

FROM THE CIRCUIT COURT OF DINWIDDIE COUNTY
James F. D'Alton, Jr., Judge

(Paul S. Roskin; Vergara & Associates, on briefs), for appellant.

(Kevin B. O'Donnell; Joan M. O'Donnell; Marlene A. Harris,
Guardian *ad litem* for the infant child; Old Towne Lawyers, on
brief), for appellee.


William A. Woodard, Jr. (father) appeals the termination of his parental rights to his child

pursuant to Code § 16.1-283(B), 16.1-283(C)(1), and 16.1-283(C)(2). Father argues he was not

responsible for the neglect that led to the placement of his child in foster care, the trial court

incorrectly identified his lack of appropriate housing for his child as the cause of the neglect, he

cooperated with the Dinwiddie Department of Social Services (DSS), and the evidence was

insufficient to prove he failed to plan for his child's future because he had adequate housing and

income. Upon reviewing the record and the briefs of the parties, we conclude this appeal is without

merit. Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

Father submitted a statement of facts for the termination hearing, but the statement of facts

failed to contain the arguments father presented to the trial court. Father endorsed the final order as

"seen and objected to," but that endorsement of the order terminating his parental rights gave no

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

indication of the arguments he presented against termination. Father concedes he objected generally on the termination order and requests review by this Court in the "interest of justice."

Rule 5A:18 states that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice."

"In order to avail oneself of the [good cause or ends of justice] exception [to Rule 5A:18], a [litigant] must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred." Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997).

Here, the record falls far short of affirmatively demonstrating a miscarriage of justice. The evidence showed that DSS became involved with the child in January 2011 when the child was living with her mother and maternal grandmother.[1] A court transferred custody of the child to the maternal grandmother even though father was a party to the proceeding. In the fall of 2011, DSS took custody of the child after the maternal grandmother was arrested and DSS found the child in the mother's care. Father filed a petition for custody, which was granted, and he took custody of the child in May 2012. A short time later, father was arrested and incarcerated. Custody was returned to the maternal grandmother in August 2012 after she had completed recommended services.

In July 2013, DSS became involved for a third time after a physical altercation between the maternal grandmother and the mother at a motel. The maternal grandmother was intoxicated at the time of the altercation. She was living in the motel because the electricity in her home had been disconnected. DSS attempted to contact father, but was unable to reach him. Father contacted DSS a short time later, but he agreed that he did not have suitable housing and was

---

[1] The child was born on May 27, 2007.

unable to take custody of the child. DSS took legal custody of the child on August 2, 2013. At the preliminary removal hearing on August 3, 2013, father stated he recently moved to a certain address and received disability benefits, but he did not have a copy of the lease or verification of his income. The foster care plan had the concurrent goals of relative placement or adoption. Donna Harrison, a social worker with DSS, met with father on more than one occasion to ensure that he understood what he needed to accomplish in order to be considered as a placement for the child. Since August 2013, father had not provided DSS with a copy of his lease or any additional information about his housing, verification of his income, or verification of his participation in mental health treatment, substance abuse counseling, or parenting classes.[2] At the termination hearing on November 12, 2014, father testified he resided with the mother of his youngest child and presented a copy of an August 2014 lease and an August 11, 2014 letter from the Social Security Administration regarding the amount of his benefits.[3]

Code § 16.1-283(C)(2) provides for the termination of parental rights when parents are "unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement . . . ." Termination under Code § 16.1-283(C) "hinge[s] not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271, 616 S.E.2d 765, 772 (2005).

---

[2] DSS made a trial placement of the child with a maternal relative, but that placement was not successful and DSS removed the child from the relative's placement in late March or early April 2014. Father was aware of the placement. On April 4, 2014, the court approved DSS's request to delete the goal of relative placement from the foster care service plan and approved the goal of adoption.

[3] The address on the lease was not an address previously disclosed to DSS.

DSS first became involved with the child in 2011 and, except for a few months in 2012, father has not been able to care for the child. Father failed to provide verification of stable housing and his income. Father also failed to participate in mental health treatment, substance abuse counseling, or parenting classes. DSS presented clear and convincing evidence that father has been unwilling or unable to remedy substantially the conditions which led to the child's foster care placement, and father has failed to show a miscarriage of justice has occurred when the trial court terminated his parental rights. Thus, we summarily affirm the circuit court's termination order pursuant to Rule 5A:27.[4]

Affirmed.

---

[4] In light of our conclusion concerning termination under Code § 16.1-283(C)(2), we need not consider father's arguments concerning Code § 16.1-283(C)(1) or 16.1-283(B). See Fields v. Dinwiddie Cnty. Dep't of Soc. Servs., 46 Va. App. 1, 8, 614 S.E.2d 656, 659 (2005) (termination of parental rights upheld under one subsection of Code § 16.1-283 forecloses the need to consider termination under alternative subsections).