COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, O'Brien and Senior Judge Bumgardner

CARRIE E. ALLEN

MEMORANDUM OPINION[*]

v.      Record No. 1746-15-2                                    PER CURIAM
                                                               MAY 17, 2016

HENRICO DEPARTMENT OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF HENRICO COUNTY
John Marshall, Judge

(John W. Parsons, on brief), for appellant.

(Karen E. Dottore, Assistant County Attorney; Donna D. Berkeley,
Guardian *ad litem* for the minor child, on brief), for appellee.


Carrie E. Allen, mother, appeals the termination of her residual parental rights to her son,

G.A., pursuant to Code § 16.1-283(C)(2).  She argues on appeal that the trial court erred in

terminating her parental rights because the evidence was insufficient to prove that termination was

in the best interests of the child and that she had been unable or unwilling to remedy substantially

the conditions that led to her son's placement in foster care, notwithstanding the rehabilitative

efforts of the agencies involved.  Upon reviewing the record and briefs of the parties, we conclude

that this appeal is without merit.  Accordingly, we summarily affirm the decision of the trial court.

Rule 5A:27.

When reviewing a decision to terminate parental rights, we presume the circuit court

"thoroughly weighed all the evidence, considered the statutory requirements, and made its

determination based on the child's best interests."  Toms v. Hanover Dep't of Soc. Servs., 46

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Va. App. 257, 265-66, 616 S.E.2d 765, 769 (2005) (quoting Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005)).

On August 13, 2007, G.A. was born with opiates in his system. The Richmond Department of Social Services (RDSS) opened a case with the family. The foremost concerns mother faced were stable housing, substance abuse, and employment. Mother did not consistently participate in substance abuse treatment or counseling, and she relapsed on drugs several times. RDSS's involvement with the family ended in 2008 or 2009.

In November of 2013, mother was arrested for charges related to prostitution. After the arrest, mother missed several court hearings and G.A. was absent from school for two weeks. In February of 2014, the Henrico Department of Social Services (HDSS) facilitated the transfer of custody of G.A. to family friends after mother was incarcerated for offenses related to the possession of heroin. On July 8, 2014, the family could no longer care for G.A. HDSS placed him in foster care based on mother's housing instability, substance abuse, and pending criminal charges.

The initial foster care plan contained a goal of return home. In order for mother to regain custody, she needed to continue substance abuse treatment, improve her parenting skills, maintain sobriety for at least one year, create a support network to maintain sobriety, participate in therapy addressing her mental health issues, and establish stable housing, employment, and finances. HDSS referred mother for substance abuse treatment and counseling. In addition, HDSS monitored the case and arranged regular visitation. At that time, mother was residing with her boyfriend in the Fredericksburg area.

G.A. had been in foster care for fifteen months at the time of the October 5, 2015 trial court hearing. During those fifteen months, mother resided in three to four residences. At the time of the hearing, she was living with a male roommate and her name was not on the lease to the apartment. Mother provided HDSS with a sublease agreement executed between mother and the roommate, but

the lease was set to expire seven days after the hearing. Thus, mother still lacked stable housing at the time of the trial court hearing. In addition, HDSS had been unable to complete a home visit of mother's current residence because the roommate's bedroom was locked at the time of the home visit. Furthermore, mother had not provided HDSS with completed background check forms for her roommate. The background check was required prior to placing G.A. back in mother's custody as long as mother resided with the roommate. Several weeks before the trial court hearing, mother asked the social worker to meet her roommate.

In October of 2014, mother completed a parenting and psychological evaluation with Dr. Craig King. Dr. King diagnosed mother with opioid use disorder, alcohol abuse disorder, panic disorder, and major depressive disorder. Dr. King recommended that mother complete an outpatient substance abuse program and, if that was not successful, that she participate in an inpatient program. Dr. King also recommended individual therapy. Dr. King suggested that mother exhibit six to twelve months of stability in all areas of her life in order to demonstrate she could successfully raise G.A. HDSS had difficulty reaching mother to discuss Dr. King's evaluation and his recommendations.

At the time of the trial court hearing, mother had participated in, but had not completed substance abuse treatment despite the recommendation from HDSS that she do so. Mother indicated to HDSS that she needed no further substance abuse treatment, but she did not execute the proper release forms so HDSS could verify her statement. Mother began individual counseling services three weeks before the trial court hearing, although HDSS had recommended for about one year that she attend counseling. Mother's visitation with G.A., which was suspended in February 2015 until mother participated in substance abuse treatment and counseling, had not resumed by the time of the trial.

Mother struggled with maintaining employment. She was often financially reliant on a friend. James Turner, who had a carpet cleaning and installation business, testified mother had been employed by him for about two years. Mother had not reported to HDSS that she was employed during this time period. She also resided in Fredericksburg during part of this time frame, and Turner stated she did not work for him many hours per week when she lived in Fredericksburg.

Evidence was presented that G.A. was doing well in foster care. He was receiving weekly therapy sessions as recommended. He had bonded with his foster parents and brother, and the current foster family was willing to adopt him.

At the conclusion of the evidence, the trial court found that "the only thing that's clear in this case so far is that . . . for whatever reason [mother] has not deemed it necessary to try to substantially comply until the last three or four weeks." The court found the only area in which mother had shown any stability was her participation in substance abuse treatment. The trial court stated that HDSS gave mother "every opportunity at every turn to work with [her] to try to get [her] where [she] need[ed] to be." The court found, however, that mother was "not out here doing the things that she needs to do to . . . to satisfy DSS . . . to show she's the best person for the child." The trial court further found mother had had "plenty of time" to comply with the recommendations of HDSS. The trial court also noted mother's housing was not stable and her employment situation was unclear. The trial court terminated mother's parental rights to G.A.

"The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Toms, 46 Va. App. at 266, 616 S.E.2d at 769 (quoting Fields, 46 Va. App. at 7, 614 S.E.2d at 659). "In its capacity as factfinder, therefore, the circuit court retains 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Id. (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)).

- 4 -

A court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

> [S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services.

Toms, 46 Va. App. at 271, 616 S.E.2d at 772 (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

Contrary to mother's arguments, the evidence proved that she did not substantially remedy the conditions that led to or required continuation of foster care for G.A. On July 8, 2014, G.A. was placed in foster care based on mother's lack of stable housing, substance abuse issues, and pending criminal charges. Mother had a long history of drug abuse. In order for mother to regain custody of G.A., she needed to complete substance abuse treatment, improve her parenting skills, create a support network to maintain sobriety, participate in therapy addressing her mental health issues, and establish stable housing, employment, and finances. As the trial court found, mother did participate in substance abuse treatment. However, she failed to provide HDSS with the appropriate consent forms so HDSS could verify her status in the treatment program. Furthermore, over the fifteen months that G.A. had been in foster care, mother had resided in at least three to four residences. The lease at her current residence was set to expire shortly, and HDSS had never approved that residence as a place where G.A. could reside due to mother's failure to provide background

information on her roommate and her failure to allow HDSS to view the entire apartment to determine if there were any possible safety concerns for G.A. Thus, mother did not have stable housing at the time of the trial court hearing. Furthermore, her employment situation was questionable at best.

In addition, G.A. was doing well in foster care and he had bonded with the foster family who wanted to adopt him. Moreover, mother had not had visitation with G.A. in more than one year.

"The twelve-month time limit established by Code § 16.1-283(C)(2) was designed to prevent an indeterminate state of foster care 'drift' and to encourage timeliness by the courts and social services in addressing the circumstances that resulted in the foster care placement." L.G. v. Amherst Cty. Dep't of Soc. Servs., 41 Va. App. 51, 56, 581 S.E.2d 886, 889 (2003).

In conclusion, mother had not substantially remedied the conditions that led to G.A. being in, and remaining in, foster care. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Accordingly, the trial court did not err in finding that termination of mother's parental rights was in the best interest of G.A. and in concluding that clear and convincing evidence supported the termination of mother's parental rights pursuant to Code § 16.1-283(C)(2).

For the foregoing reasons, the trial court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.