COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Alston and Senior Judge Coleman

JANICE KENT

                                                                MEMORANDUM OPINION[*]
v.        Record No. 1104-11-1                                  PER CURIAM
                                                                JANUARY 17, 2012
VIRGINIA BEACH DEPARTMENT
 OF HUMAN SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Stephen C. Mahan, Judge

(Richard E. Garriott, Jr.; Patrick L. Maurer; Clarke, Dolph, Rapaport,
Hull, Brunick & Garriott, P.L.C., on brief), for appellant.

(Mark D. Stiles; Christopher Boynton; Rachel Allen; Peter
Imbrogno, Guardian *ad litem* for the minor children; Office of the
City Attorney; Peter Imbrogno & Associates, P.C., on brief), for
appellee.


On May 26, 2011, the trial court terminated the residual parental rights of Janice Kent

(appellant) to her children, R.K. and A.K., pursuant to Code § 16.1-283(C)(2).  On appeal of this

decision, appellant challenges the sufficiency of the evidence to support the terminations.  Upon

reviewing the record and briefs of the parties, we conclude this appeal is without merit.

Accordingly, we summarily affirm the decision of the trial court.  See Rule 5A:27.

On appeal, we view the evidence in the "'light most favorable' to the prevailing party in

the circuit court and grant to that party the benefit of 'all reasonable inferences fairly deducible

therefrom.'" Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 262, 616 S.E.2d 765, 767

(2005) (quoting Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409

S.E.2d 460, 463 (1991)).  When reviewing a decision to terminate parental rights, we presume the

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

circuit court "'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Id. at 265-66, 616 S.E.2d at 769 (quoting Fields v. Dinwiddie County Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005)). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. at 266, 616 S.E.2d at 769 (quoting Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted)). "In its capacity as factfinder, therefore, the circuit court retains 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Id. (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)).

Appellant and her husband, Richard Kent (Kent), are the biological parents of R.K. and A.K., who were born on April 27, 2005, and September 7, 2003, respectively.[1] The two children first came to the attention of Virginia Beach Department of Human Services (VBDHS) during an investigation involving M.D., appellant's daughter. At a hearing on March 31, 2008, on the motion of VBDHS to obtain preliminary protective orders for the children, the court ordered appellant and Kent to be tested for drugs and alcohol.[2] Appellant tested positively for alcohol with a preliminary breath test result of .125% blood alcohol content. Kent tested positively for marijuana. Consequently, A.K. and R.K. were removed from appellant's home and taken into

---

[1] Kent's parental rights were terminated by the Virginia Beach Juvenile and Domestic Relations District Court (juvenile court). He appealed the decision, but later withdrew his appeal.

[2] VBDHS had received complaints regarding appellant dropping the children off at daycare while intoxicated, physical abuse of M.D. by appellant, and Kent driving while intoxicated to transport A.K. to a hospital emergency room. The protective orders were sought because appellant and Kent refused to comply with their prior agreement to submit to substance abuse evaluations and drug screenings no later than March 7, 2008.

temporary custody by VBDHS on March 31, 2008.[3]  Custody of the children was transferred to VBDHA on May 6, 2008, upon a finding of abuse or neglect.

Brenda Herron was the foster care social worker for A.K. and R.K. beginning on August 26, 2008.  The foster care service plan, with the goal of reunification of the children with appellant and Kent, required appellant to complete a substance abuse evaluation, receive continuing education regarding alcohol, and abstain from alcohol use.  Appellant also was to participate in individual therapy and counseling with Kent, to maintain a clean and healthy environment for her children, and to maintain contact with VBDHS.

Dr. Brian Wald, a licensed clinical psychologist, conducted psychological evaluations of appellant and Kent between July and December 2008.  It was revealed that Kent held a graphic conversation about sexual matters with M.D. when she was six years old.  During the incident, Kent pointed out the labia majora and labia minor on appellant, who at the time was passed out from drinking alcohol.  When Dr. Wald questioned appellant about the matter, she initially said she was "disgusted" by Kent's actions.  However, she later said she did not understand "what the big deal was" about the incident.  Dr. Wald concluded that appellant's denial of the significance of the event raised serious concerns about her ability to protect her children.  In addition, appellant and Kent had had numerous physical altercations with each other in front of the children.  Dr. Wald recommended couples therapy for appellant and Kent, as well as ongoing treatment related to alcohol abuse and their inability to take responsibility for their poor parenting decisions.  Dr. Wald stated that appellant should abstain from alcohol completely and obtain treatment for her inability to accept fault in parenting.

---

[3] When she entered the custody of VBDHS, A.K. had a staph infection and an ear infection.  Both A.K. and R.K. had a history of repeated staph infections.

Cynthia Skeete began counseling appellant in February 2009 through VBDHS's referral to Catholic Charities. During the course of counseling, appellant missed appointments and made minimal progress toward the goal of putting boundaries in place to help her protect her children. The sessions ended in August 2009 when appellant requested a different counselor. In December 2009, the agency's Family Assessment and Planning Team refused to provide additional funding for appellant's counseling because her previous participation was not acceptable.

Herron testified that throughout her dealings with appellant, appellant maintained that she did not need counseling. During an early interview appellant indicated that she had been subjected to domestic violence by Kent and that she had inflicted domestic violence herself. Subsequently, however, appellant said that she and Kent had worked through their differences and did not require couples therapy.

Appellant was inconsistent with her participation in the alcohol treatment program, although she and Kent did complete a substance abuse program through New Bridges. Appellant reported that she attended Alcoholics Anonymous meetings. Nonetheless, when appellant and Kent appeared in court on November 21, 2009, they smelled of alcohol. During a visit to appellant's home, Herron observed discarded beer and wine bottles outside the residence.

Diane Frantz was the CASA worker involved with appellant's family beginning in April 2008. Some of Frantz's contacts with appellant and Kent were confrontational. During an unannounced visit to the home appellant and Kent were renting on April 22, 2009, appellant told Frantz to "fucking leave" because appellant was in the middle of cooking dinner and she needed to use the bathroom. Appellant tried to close the garage door on Frantz and her supervisor. Frantz and her supervisor noticed a strong odor of alcohol about appellant and Kent, and Frantz voiced this observation. Appellant said the only thing Franz smelled was the chicken she was

cooking. During another meeting Frantz had with appellant and Kent, appellant mentioned that she thought some of the services being required of her were a waste of time because she and Kent were good parents.

A.K. reported to Dr. Portia Rawles, a clinical psychologist, that her parents had "done nasty things to her," and elaborated that appellant and Kent had touched her vaginal area and her breasts. Rawles recommended a stable and structured environment for A.K., as well as ongoing individual therapy.

Christie White, a licensed clinical social worker, began counseling A.K. regularly in December 2008 because the child was exhibiting behavioral and emotional problems in her foster home and at school. A.K. was diagnosed with depressive disorder and Attention Deficit Hyperactivity Disorder. A.K. exhibited inappropriate sexual behaviors when she was five years old.

The juvenile court terminated appellant's and Kent's parental rights to A.K. and R.K. on February 26, 2010. Upon appeal of the decisions, an evidentiary hearing was held in the trial court on June 15, 2010. The matter was continued until a second evidentiary hearing was held on May 26, 2011.

During the continuance of the matter in the trial court, appellant was incarcerated in Pennsylvania from December 2010 until extradition to Virginia in January 2011. She remained incarcerated at the time of her conviction, on May 11, 2011, of felonious destruction of property, breaking and entering, and attempted grand larceny. At the time of the May 26, 2011 termination hearing, appellant had been released from jail and was living in a room she had rented in a private residence. She was unemployed and had no plans to divorce Kent, who remained incarcerated. Her sentencing hearing for the May 2011 convictions was scheduled for July 29, 2011.

At the time of the 2011 termination hearing, A.K. had made a great deal of progress through therapy and her stable home environment, which she did not wish to leave. Both R.K. and A.K. had bonded with their foster parents, with whom they had lived together since September 2008. A.K. gave no indication she remained bonded with appellant. A.K. and R.K. were performing well in school and socially, were healthy, and were happy.

At the May 26, 2011 hearing, appellant testified that she and Kent lived in a hotel for most of 2010 because financial hardship had caused them to lose their home. Appellant testified that she had been dissatisfied with the counseling services Skeete provided, so she obtained a different counselor, Rita Patterson. Appellant said she met with Patterson for about six weeks, but the counseling was discontinued due to Patterson's medical issues. Appellant stated she was not able to obtain free or reduced cost counseling services, as Herron had suggested. Appellant admitted that she was an alcoholic, and said she had not consumed alcohol since sometime in 2010. Appellant denied that the children had witnessed physical fights between her and Kent. Appellant said she was convicted of the three felonies in May 2011 because she was with Kent at the "wrong place at the wrong time." Appellant also was convicted in July of 2010 on a charge of unlawfully possessing an open container of alcohol.

Appellant argues the evidence was insufficient to support the termination of her parental rights. Pursuant to Code § 16.1-283(C)(2), a parent's residual parental rights "of a child placed in foster care . . . may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child" and that

> [t]he parent . . . , without good cause, ha[s] been unwilling or
> unable within a reasonable period of time not to exceed twelve
> months from the date the child was placed in foster care to remedy
> substantially the conditions which led to or required continuation
> of the child's foster care placement, notwithstanding the
> reasonable and appropriate efforts of social, medical, mental health
> or other rehabilitative agencies to such end. . . .

- 6 -

A.K. and R.K. were removed from appellant's home on March 31, 2008, when they were four and one-half and almost three years old, respectively. The removal was necessitated by appellant's failure to refrain from abusing alcohol, which led to a finding of abuse or neglect of the children. As of the termination hearing on May 26, 2011, the children had been in foster care for more than three years. During that period of time, appellant had failed to comply with the requirements of the foster care service plan regarding ongoing substance abuse treatment and individual counseling, despite the agency's efforts to assist her. Appellant had proven uncooperative with the efforts of VBDHS, claimed required treatment was unnecessary and a waste of her time, and had continued to use alcohol despite being ordered to refrain. VBDHS was not required to "force its services upon an unwilling or disinterested parent." Harris v. Lynchburg Div. Soc. Serv., 223 Va. 235, 243, 288 S.E.2d 410, 415 (1982).

In determining what is in the best interests of a child, this Court has stated:

> a court must evaluate and consider many factors, including the age and physical and mental condition of the child or children; the age and physical and mental condition of the parents; the relationship existing between each parent and each child; the needs of the child or children; the role which each parent has played, and will play in the future, in the upbringing and care of the child or children; and such other factors as are necessary in determining the best interests of the child or children.

Barkey v. Commonwealth, 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986).

Clear and convincing evidence proved that termination of appellant's parental rights was in the best interests of both A.K. and R.K. As of the date of the trial court's decision, A.K. and R.K. had been in foster care for more than three years. Despite A.K.'s initial difficulties with behavior, A.K. and R.K. were happy and thriving in their foster home, and had bonded with the foster parents. Appellant, who had recently been released from jail, was unemployed and unequipped to provide a suitable home for the children. Moreover, appellant had indicated unwillingness to separate from her husband, whose parental rights had been terminated.

We recognize that "'[t]he termination of [residual] parental rights is a grave, drastic and irreversible action.'" Helen W. v. Fairfax County Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991) (quoting Lowe v. Dep't of Public Welfare of Richmond, 231 Va. 277, 280, 343 S.E.2d 70, 72 (1986)). However, "[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

We find the evidence sufficient to support the trial court's decision to terminate appellant's parental rights to A.K. and R.K. pursuant to Code § 16.1-283(C)(2). Therefore, we summarily affirm the trial court's decision.

Affirmed.