COURT OF APPEALS OF VIRGINIA


Present: Judges Elder, Beales and Senior Judge Annunziata


PAUL DAVIES

v.     Record No. 2376-11-2

PRINCE EDWARD COUNTY
 DEPARTMENT OF SOCIAL SERVICES

                                                    MEMORANDUM OPINION[*]
                                                         PER CURIAM
KIMBERLY WADDELL                                        MAY 29, 2012

v.     Record No. 2377-11-2

PRINCE EDWARD COUNTY
 DEPARTMENT OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF PRINCE EDWARD COUNTY
Leslie M. Osborn, Judge

(James C. Bell; Blessing & Bell, on brief), for appellant Paul
Davies.

(Thomas M. Jones; The Jones Law Firm, P.C., on brief), for
appellant Kimberly Waddell.

(Jody H. Fariss; Eric A. Tinnell, Jr., Guardian *ad litem* for the
minor child, on briefs), for appellee.


Paul Davies (father) and Kimberly Waddell (mother) appeal trial court orders terminating

their parental rights to their minor child pursuant to Code § 16.1-283(B) and Code § 16.1-283(C)(2).

On appeal, both parents challenge the sufficiency of the evidence to support the terminations. Upon

reviewing the record and briefs of the parties, we conclude that this appeal is without merit.

Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On appeal, we view the evidence in the "'light most favorable' to the prevailing party in the circuit court and grant to that party the benefit of 'all reasonable inferences fairly deducible therefrom.'" Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 262, 616 S.E.2d 765, 767 (2005) (quoting Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)). When reviewing a decision to terminate parental rights, we presume the circuit court "'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Id. at 265-66, 616 S.E.2d at 769 (quoting Fields v. Dinwiddie Cnty. Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005)). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. at 266, 616 S.E.2d at 769 (quoting Logan, 13 Va. App. at 128, 409 S.E.2d at 463). "In its capacity as factfinder, therefore, the circuit court retains 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Id. (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)).

The minor child, J.D., was born to the parties on December 18, 2008. The Prince Edward County Department of Social Services (PEDSS) first removed J.D. from the home in April 2009 because the family home was in deplorable and filthy condition. The floor in the home contained old food, dirty dishes, cigarette butts, dirty diapers, and dog feces. The dog in the home had worms and was observed licking J.D. in the face. PEDSS offered the parents a number of services, including referrals and funding for anger management and parenting classes. PEDSS referred J.D. to a developmental group for evaluation and services, which included in-home work with the parents. They offered a cleaning service to the family and provided assistance with restoring electrical service to the home.

J.D. was returned to foster care on June 10, 2010 after being back in the family home for only eleven months. PEDSS had received a complaint that J.D. was not supervised. PEDSS

employees found J.D., who was eighteen months old, unsupervised and in the lobby of a motel where the family then resided. The PEDSS employees located father on the property and viewed the family's motel room, where they again found deplorable living conditions. The room contained and smelled of trash and rotten food. Medications and spoiled food were within reach of J.D. J.D. was covered in dirt, he was hungry, and he had head lice. Mother had been arrested the previous evening on an assault and battery charge involving father.

PEDSS prepared a new foster care plan containing the same goals and services for the parents that were in the first foster care plan. The plan provided that the parents were to participate in marriage counseling. Mother was to participate in anger management classes. Both parents were to coordinate visits with J.D. and to maintain contact with PEDSS. In addition, the parents were to find adequate housing.

The parents separated, and mother moved out of the motel. Kimberly Allen, a social worker with PEDSS, testified mother had lived in three to four different places since the separation and was residing with a paramour at the time of the hearing. Thus, Allen opined that mother did not have adequate and stable housing for J.D. Allen testified mother failed to complete anger management classes, but she did complete a parenting class. Mother also did not complete recommended substance abuse counseling and had a history of alcohol abuse.

Allen testified employees of PEDSS made numerous visits to father's motel room and it remained in the same filthy condition. PEDSS encouraged father to find new housing, and PEDSS assisted in his search for housing. At one point PEDSS found an appropriate apartment for father and offered to pay a security deposit and the first month's rent for him. Allen testified that at the last minute father changed his mind about the apartment and insisted on remaining at the motel. Allen visited father's motel room just one week before the hearing, and it contained overflowing

trash cans filled with food, a rotten food smell, and visible dirt. Evidence was presented that the motel room was infested with bed bugs at one point.

J.D. was developmentally delayed when he came into foster care. However, at almost age three, he had shown improvements in his speech, social interactions, and motor skills. Allen testified he is very affectionate and loving and has bonded well with his foster family.

Father testified at the hearing and he stated the apartment found by PEDSS was located one-half mile from the nearest bus stop and J.D. would "freeze" in the winter months when they walked to the bus stop. Father also stated that the major obstacle in obtaining new housing was the cost. He testified he cooperated with services provided by the Infant Toddler Connection, was making improvements on the motel room, had attended parenting counseling, and worked with Piedmont Healthy Families for a period of time.

Mother testified she completed classes in anger management after the 2010 removal of J.D. She also stated she was diagnosed with mental health issues for which she takes medication. However, she provided no documentation to support these assertions, stating that she came to the court hearing "unprepared." She testified she resides with her paramour, his mother, and his uncle and she is employed at the paramour's family store earning $60 per week. Mother also testified that although the foster care plan provided that she was to "follow up" with Crossroads, she could not afford to complete services there, including substance abuse therapy.

The guardian *ad litem* testified J.D. is thriving with his foster family and has shown significant improvements in his speech and motor skills. The guardian *ad litem* further stated J.D. is "an incredibly happy child after having seen the obstacles he's overcome . . . ." He testified J.D. prospers on having a regular schedule and is now age appropriate in his development. He opined that it was in the best interests of J.D. to proceed with the termination of the parental rights of mother and father.

Code § 16.1-283(C)(2) states a parent's parental rights may be terminated if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

In determining what is in the best interests of a child, this Court has stated:

> a court must evaluate and consider many factors, including the age and physical and mental condition of the child or children; the age and physical and mental condition of the parents; the relationship existing between each parent and each child; the needs of the child or children; the role which each parent has played, and will play in the future, in the upbringing and care of the child or children; and such other factors as are necessary in determining the best interests of the child or children.

Barkey v. Commonwealth, 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986).

The trial court terminated the rights of both parents pursuant to Code § 16.1-283(B) and 16.1-283(C)(2). The trial court found that father had chosen to live in the motel rather than having custody of his child, despite the fact that PEDSS "ha[s] done everything in the world they can do," including offering to pay the first month's rent and the security deposit for an apartment. The trial court also found that mother did not comply with the foster care plan concerning recommended treatments and her living arrangement was not adequate for J.D. Generally, the trial court found that both the parents had failed to show a willingness to consider the best interests of J.D. or to develop a plan to take care of J.D. despite all the time they had to do so.

We recognize that "'[t]he termination of [residual] parental rights is a grave, drastic and irreversible action.'" Helen W. v. Fairfax Cnty. Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991) (quoting Lowe v. Dep't of Pub. Welfare of Richmond, 231 Va. 277, 280, 343 S.E.2d 70, 72 (1986)). However, "[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his

[or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Clear and convincing evidence proved that termination of the parental rights of both father and mother was in the best interests of J.D. J.D., who was almost three years old at the time of the trial court hearing, has spent the majority of his life in foster care where he is thriving. Both parents failed to take advantage of all of the services offered by PEDSS. In addition, they were unwilling or unable to remedy the conditions that led to J.D.'s placement in foster care by failing to obtain safe, stable, and adequate housing for him. "'[P]ast actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold.'" Winfield v. Urquhart, 25 Va. App. 688, 695-96, 492 S.E.2d 464, 467 (1997) (quoting Linkous v. Kingery, 10 Va. App. 45, 46, 390 S.E.2d 188, 194 (1990)).

We find the evidence sufficient to support the trial court's decision to terminate the parental rights of father and mother to J.D. pursuant to Code § 16.1-283(C)(2). Therefore, we need not consider any challenge appellant raises to the sufficiency of the evidence for a termination under Code § 16.1-283(B). See Fields, 46 Va. App. at 8, 614 S.E.2d at 659.

For the foregoing reasons, we summarily affirm the termination of the parental rights of father and mother.

Affirmed.