COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Huff and Senior Judge Haley


DANIEL BURNETTE

                                                              MEMORANDUM OPINION[*]
v.       Record No. 0942-12-3                                      PER CURIAM
                                                                 AUGUST 28, 2012
BRISTOL DEPARTMENT OF
 SOCIAL SERVICES


                    FROM THE CIRCUIT COURT OF THE CITY OF BRISTOL
                                    Larry B. Kirksey, Judge

              (Barry L. Proctor, on brief), for appellant.

              (Edward G. Stout; James H. Preas, III, Guardian *ad litem* for the
              minor children; Curcio Stout & Pomrenke; HPS Legal Group, on
              brief), for appellee.


        On March 2, 2012, the trial court terminated the residual parental rights of Daniel

Burnette (appellant) to his daughters, D.H. and D.B., pursuant to Code § 16.1-283(B),

16.1-283(C)(1), and 16.1-283(C)(2).  On appeal of this decision, appellant challenges the

sufficiency of the evidence to support the terminations.  Upon reviewing the record and briefs of

the parties, we conclude this appeal is without merit.  Accordingly, we summarily affirm the

decision of the trial court.  See Rule 5A:27.

        On appeal, we view the evidence in the "'light most favorable' to the prevailing party in

the circuit court and grant to that party the benefit of 'all reasonable inferences fairly deducible

therefrom.'"  Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 262, 616 S.E.2d 765, 767

(2005) (quoting Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d

460, 463 (1991)).  When reviewing a decision to terminate parental rights, we presume the

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

circuit court "'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Id. at 265-66, 616 S.E.2d at 769 (quoting Fields v. Dinwiddie Cnty. Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005)). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. at 266, 616 S.E.2d at 769 (quoting Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted)). "In its capacity as factfinder, therefore, the circuit court retains 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Id. (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)).

Appellant and Goldie Harmon are the biological parents of D.B. and D.H., born on January 29, 2007 and December 21, 2007, respectively.[1] On July 23, 2010, the Bristol Department of Social Services (DSS) removed the children from Harmon's care. At the time of the removal, appellant was in jail on drug charges and Harmon and the two children were homeless. Prior to the removal, DSS had developed a safety plan for the children because of (a) appellant's involvement with a methamphetamine laboratory located in the backyard of the building where the family had been staying and (b) the children's exposure to violence related to appellant's drug activities.

On the day of the removal, Harmon left the children with two individuals who agreed to watch them for one hour. Harmon provided the caretakers with no food or diapers for the children, only a bottle of Mountain Dew. When Harmon did not return for them after four and one-half hours, the caretakers contacted the police.

---

[1] At the same hearing when the trial court terminated appellant's parental rights, it also terminated Harmon's parental rights to D.B. and D.H. Harmon did not appeal this decision.

During the months following the children's removal and placement in foster care, DSS investigated their possible placement with relatives. DSS contacted a number of relatives of both appellant and Harmon, but none proved willing and able to care for the two children.

Appellant remained incarcerated continuously after the children's removal from the home. Several visitations at the jail were arranged for him to see the children. Appellant maintained contact with the children through letters.

In 2011, the trial court convicted appellant of possessing and distributing methamphetamine, distributing buprenorphine, distributing an imitation controlled substance, possessing precursors to manufacturing methamphetamine, and two counts of conspiracy. On March 30, 2011, appellant was sentenced to a total of thirty-eight years with thirty-three years and one month suspended. Appellant subsequently was found in violation of the terms of his probation and ordered to serve an additional year. On May 24, 2011, Harmon was sentenced, upon one conviction of distributing methamphetamine and two convictions of conspiracy, to a total of twenty-five years with twenty-two years and six months suspended.

The termination hearing for appellant and Harmon was held on February 27, 2012. At the time of the hearing, D.H. was four and D.B. was five. Harmon was scheduled to be released from prison on May 20, 2012. Appellant's scheduled release date was September 3, 2015. However, appellant also faced felony criminal charges in Maryland. Christy Brooks, the DSS foster care social worker assigned to the matter, testified that typically it takes about one year following release from incarceration for a parent to be able to resume parenting duties.

The trial court heard evidence that both D.H. and D.B. were thriving in their foster home, where they had remained since their removal. They were on track developmentally and had adjusted well to their home and preschool environments, but permanency was needed in their lives.

Testifying in his own behalf, appellant maintained that he loved his two daughters and he regretted his mistakes that led to his incarceration. Appellant admitted that he had been involved with drugs from the age of thirteen until his incarceration. Appellant further admitted that before his incarceration he had not held a steady job and helped support his family by selling drugs.

Appellant argues the evidence was insufficient to support the termination of his parental rights. Pursuant to Code § 16.1-283(C)(2), a parent's residual parental rights "of a child placed in foster care . . . may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child" and that

> [t]he parent . . . , without good cause, ha[s] been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

In determining what is in the best interests of a child, this Court has stated:

> a court must evaluate and consider many factors, including the age and physical and mental condition of the child or children; the age and physical and mental condition of the parents; the relationship existing between each parent and each child; the needs of the child or children; the role which each parent has played, and will play in the future, in the upbringing and care of the child or children; and such other factors as are necessary in determining the best interests of the child or children.

Barkey v. Commonwealth, 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986).

Clear and convincing evidence proved the factors required for termination under Code § 16.1-283(C)(2), including that termination was in the best interests of D.H. and D.B. When the children were removed from the home in July 2010, DSS had created a safety plan for the girls because of appellant's prior association with drugs and related violence. As of the date of the trial court's decision, four- and five-year-old D.H. and D.B. had been in foster care for more than one and one-half years. They were thriving in their foster home, but the trial court took note of

the need for permanency in their lives. Appellant was unable to provide the children with permanency or a safe home environment. Appellant was incarcerated at the time of termination hearing and was not expected to be released for more than three years, at the earliest. Moreover, the trial court heard evidence that a parent typically is unable to resume care of a child for about one year after release from incarceration.

We recognize that "'[t]he termination of [residual] parental rights is a grave, drastic and irreversible action.'" Helen W. v. Fairfax Cnty. Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991) (quoting Lowe v. Dep't of Pub. Welfare of Richmond, 231 Va. 277, 280, 343 S.E.2d 70, 72 (1986)). However, "[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). Appellant had a long history of drug use and involvement in drug distribution. In this regard, appellant's "'past actions . . . over a meaningful period serve as good indicators of what the future may be expected to hold.'" Winfield v. Urquhart, 25 Va. App. 688, 695-96, 492 S.E.2d 464, 467 (1997) (quoting Linkous v. Kingery, 10 Va. App. 45, 46, 390 S.E.2d 188, 194 (1990)).

Considering all the facts and circumstances, there was clear and convincing evidence to prove the factors required for termination of appellant's parental rights pursuant to Code § 16.1-283(C)(2). In light of this conclusion, we need not consider whether the evidence was sufficient to support terminations under Code § 16.1-283(B) or § 16.1-283(C)(1). See Fields, 46 Va. App. at 8, 614 S.E.2d at 659. We summarily affirm the decision of the trial court.

Affirmed.

- 5 -