COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Frank, Huff and Senior Judge Haley

CRYSTAL HAREFORD

                                                                    MEMORANDUM OPINION[*]
v.       Record No. 0757-14-3                                            PER CURIAM
                                                                     OCTOBER 21, 2014
HARRISONBURG ROCKINGHAM
 SOCIAL SERVICES DISTRICT


               FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
                              James V. Lane, Judge

          (Shelly R. James, on brief), for appellant.

          (Rachel Errett Figura, Assistant County Attorney; David Ray
          Martin, Guardian *ad litem* for the minor child; Miner, Martin, and
          Hahn, on brief), for appellee.


       On April 3, 2014, the trial court terminated the residual parental rights of Crystal Hareford

(appellant) to her son, A.H., pursuant to Code § 16.1-283(C)(2).  On appeal of this decision,

appellant challenges the sufficiency of the evidence to support the termination.  Upon reviewing the

record and briefs of the parties, we conclude this appeal is without merit.  Accordingly, we

summarily affirm the decision of the trial court.  See Rule 5A:27.

       On appeal, we view the evidence in the "'light most favorable' to the prevailing party in the

circuit court and grant to that party the benefit of 'all reasonable inferences fairly deducible

therefrom.'"  Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 262, 616 S.E.2d 765, 767

(2005) (quoting  Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d

460, 463 (1991)).  When reviewing a decision to terminate parental rights, we presume the circuit

court "'thoroughly weighed all the evidence, considered the statutory requirements, and made its

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

determination based on the child's best interests.'" Id. at 265-66, 616 S.E.2d at 769 (quoting Fields v. Dinwiddie Cnty. Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005)). "The trial court's judgment, 'when based on evidence heard ore tenus, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. at 266, 616 S.E.2d at 769 (quoting Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted)). "In its capacity as factfinder, therefore, the circuit court retains 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Id. (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)).

The Harrisonburg Rockingham Social Services District (HRSSD) became involved with appellant's family in July 2009. At the time, appellant was nineteen years old. She lived in the home with her parents and two younger siblings, but occasionally stayed with friends for periods of time. Unhealthy and unsanitary conditions in the home continued unabated for a lengthy period of time, and led to adjudications of abuse and neglect regarding appellant's siblings. Appellant's younger sister, Ch.H., was placed in foster care, but was later returned to the custody of appellant's mother under the condition that appellant not reside with them.

Appellant had graduated from high school in 2009, and she had been determined to be intellectually disabled. Appellant was diagnosed with post-traumatic stress disorder, depressive disorder, mixed receptive/expressive language disorder, and borderline intellectual functioning. She received services through the Community Services Board (CSB), but the services were terminated due to her noncompliance. She lived with various friends in 2011. During that time she became acquainted with Charles Morris, whom appellant initially named as A.H.'s father.[1] After appellant became pregnant with A.H., appellant went to live with her mother. A.H. was born on February 6, 2012.

_____

[1] In 2014, A.H.'s father was identified, but he was not Morris.

- 2 -

In response to a complaint in February 2012, HRSSD social worker Chad Breeden went to the home where appellant's mother resided with Ch.H. The conditions in the home were unsanitary, with spilled food, dirty dishes, and spoiled bottles of baby formula throughout the place. At the time of Breeden's visit, appellant was asleep on a bed with A.H., who was then three weeks old. There was no crib for A.H. in the apartment.

HRSSD secured a space for appellant and A.H. to live at Mercy House, a shelter for young mothers with babies.[2] A protective order was entered for A.H. requiring appellant to obtain permission from HRSSD before A.H. could visit or stay with appellant's mother. Appellant refused mental health services, stating that they had not benefitted her previously.

Appellant lived at Mercy House with A.H. for about a year. Appellant obtained a job at Walmart, and Mercy House provided child care for A.H. while appellant worked. Public transportation was available and appellant was provided with bus vouchers, but she did not use the bus system consistently. HRSSD workers often drove appellant to or from work with little to no advance notice that she needed a ride. Appellant appeared unable to manage her work schedule and coordinate transportation and daycare for A.H. On a number of instances appellant brought A.H. to daycare in need of bathing or without necessary items such as diapers, formula, or food. Despite assistance from HRSSD, appellant was unable to manage her finances so that she could provide needed items for A.H. on a consistent basis. Appellant failed to maintain sanitary conditions in her room. Appellant also left Mercy House with A.H. and stayed in places unapproved by HRSSD, which violated the safety plan for A.H. Appellant dated a man known to be a sex offender.

Mercy House discharged appellant on January 4, 2013 for failure to abide by its rules. Appellant was unable to offer a viable plan to provide safe housing for A.H. As a result, HRSSD took custody of A.H. and he entered foster care.

---

[2] Residing at Mercy House was not intended to be a long term housing option.

The foster care service plan required appellant to undergo a psychological evaluation, maintain employment, and obtain stable and appropriate housing. During appellant's stay at Mercy House, fifty percent of her income was saved for her future housing expenses. More than $1,000 was returned to appellant when she was discharged from Mercy House, but she did not use that money toward obtaining suitable housing.

In the months after she left Mercy House, appellant lived with friends, a boyfriend, then her mother and the mother's boyfriend. She lost her job at Walmart, and became homeless by June 2013. In July 2013 a HRSSD social worker arranged for appellant to be readmitted at Mercy House because she was pregnant. Appellant's second son, Ca.H., was born in January 2014, and he was immediately taken into foster care.

In 2013, Dr. Joann Grayson , an expert in the field of clinical psychology, conducted a psychological and parenting evaluation of appellant during six two-hour sessions. Grayson's testing indicated appellant was at a high risk for child abuse or neglect.

Appellant had weekly supervised visits with A.H. Following her evaluation with Grayson, appellant completed a parenting class. Appellant was referred to the Department of Rehabilitation Services (DRS) for permanent job placement assistance. However, appellant did not follow up with DRS. Nor did appellant maintain involvement with group counseling through CSB.

At the time of the termination hearing on April 2, 2014, appellant still was residing at Mercy House, where housing, food, transportation, and other assistance were provided free of charge. She had obtained a job with a temporary placement agency a few days before the hearing, but she had no savings. Appellant's personal hygiene was poor, and she appeared to wear clothes that were not clean. During her visitations with A.H., appellant was easily distracted and became engaged instead with her cell phone. During a supervised visit with both A.H. and Ca.H. involving a walk of several

blocks to a nearby children's museum, appellant admitted that she was unable to cope with both children.

Since his removal from appellant's custody, A.H. had developed a healthy attachment to his foster family. A.H. was a happy child, and appeared to be thriving in his environment. There was the potential for A.H. to be adopted by the foster family.

A termination of parental rights under Code § 16.1-283(C)(2) requires clear and convincing evidence that termination is in the best interests of the child and that the parent,

> without good cause, ha[s] been unwilling or unable within a
> reasonable period of time not to exceed twelve months from the
> date the child was placed in foster care to remedy substantially the
> conditions which led to or required continuation of the child's
> foster care placement, notwithstanding the reasonable and
> appropriate efforts of . . . rehabilitative agencies to such end.

In addition,

> Proof that the parent . . . , without good cause, ha[s] failed or been
> unable to make substantial progress towards elimination of the
> conditions which led to or required continuation of the child's
> foster care placement in accordance with their obligations under
> and within the time limits or goals set forth in a foster care plan . . .
> shall constitute prima facie evidence of this condition.

Code § 16.1-283(C)(2).

In determining what is in the best interests of a child, this Court has stated:

> a court must evaluate and consider many factors, including the age
> and physical and mental condition of the child or children; the age
> and physical and mental condition of the parents; the relationship
> existing between each parent and each child; the needs of the child
> or children; the role which each parent has played, and will play in
> the future, in the upbringing and care of the child or children; and
> such other factors as are necessary in determining the best interests
> of the child or children.

Barkey v. Commonwealth, 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986).

While at Mercy House, appellant did not abide by rules that protected A.H.'s health and safety. She did not consistently provide items the infant required even though she was

employed. Appellant had difficulty organizing her job schedule and daycare for A.H., depending largely on last minute assistance from HRSSD workers for transportation to and from work. Eventually, appellant was evicted from Mercy House and A.H. entered foster care in January 2013. Appellant was unable to formulate a plan to obtain proper housing for herself and A.H. even though a portion of her earnings had been saved to facilitate a transition to independent housing.

At the time of the termination hearing, A.H. had been in foster care for fourteen months, well past the twelve-month time period set forth in Code § 16.1-283(C)(2). Appellant had failed to obtain suitable independent housing for herself and A.H., and had only recently gotten a job with a temporary agency. Appellant had no savings or plan to move from Mercy House. A.H., a happy and healthy two year old, was thriving in his foster home. The foster family was a potential adoptive family for A.H. Clear and convincing evidence thus supported the trial court's conclusion that termination of appellant's parental rights was in the best interests of A.H. and that the requirements of Code § 16.1-283(C)(2) were met.

We recognize that "'[t]he termination of [residual] parental rights is a grave, drastic and irreversible action.'" Helen W. v. Fairfax Cnty. Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991) (quoting Lowe v. Dep't of Public Welfare of Richmond, 231 Va. 277, 280, 343 S.E.2d 70, 72 (1986)). However, "[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

For the foregoing reasons, we summarily affirm the trial court's ruling. See Rule 5A:27.

Affirmed.