COURT OF APPEALS OF VIRGINIA

Present: Judges Alston, Chafin and Senior Judge Haley

ANDRE HARRIS

v.      Record No. 0627-15-2

HENRICO COUNTY DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION[*]
PER CURIAM
NOVEMBER 17, 2015

FROM THE CIRCUIT COURT OF HENRICO COUNTY
Gary A. Hicks Judge

(John W. Parsons, on brief), for appellant.

(Marissa D. Mitchell, Assistant County Attorney; Alexander M.
Clarke, Guardian *ad litem* for the minor child, on brief), for
appellee.


Andre Harris appeals from a March 26, 2015 circuit court order terminating his residual

parental rights to his child pursuant to Code § 16.1-283(C)(1).  On appeal, Harris argues the trial

court erred by terminating his parental rights "because he did not, without good cause, fail to

maintain continuing contact or fail to provide or substantially plan for the future of his child for a

period of six months after the child's placement in foster care."

Upon reviewing the record and briefs of the parties, we conclude this appeal is without

merit.  Accordingly, we summarily affirm the decision of the trial court.  See Rule 5A:27.

Background

On appeal, we view the evidence in the "'light most favorable' to the prevailing party in

the circuit court and grant to that party the benefit of 'all reasonable inferences fairly deducible

therefrom.'"  Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 262, 616 S.E.2d 765, 767

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

UNPUBLISHED

(2005) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)).

Harris' child was born on October 15, 2010. The child entered foster care in September 2012. The juvenile and domestic relations district court (the JDR court) later found that the child was abused and neglected by his mother, with whom he had been residing. The initial foster care plan approved by the JDR court included the concurrent goals of returning the child home and placing the child with relatives. The Henrico County Department of Social Services (the "Department") provided services to mother and asked about potential relative placements. Mother did not provide any information about her child's father until April 2013 at which time she named Harris as the possible father of the child. The Department located Harris in July 2013. At that time, Harris was incarcerated in a correctional facility in Florida.

The child was placed with his mother in June 2013 for a trial placement at a women's and children's program. However, nineteen days later, mother left the program and returned the child to the foster family. Thereafter, mother did not cooperate with the Department and failed to appear for a scheduled DNA test, causing a delay in establishing paternity of the child. In January 2014, the JDR court terminated mother's residual parental rights with her consent and approved the Department's revised foster care plan with the goal of adoption.

Foster care social worker Sue Karyshyn began contacting Harris in September 2013. Harris initially did not respond to Karyshyn's repeated attempts to speak with him. In March 2014, DNA testing confirmed Harris was the child's father. When Karyshyn spoke with Harris later that month, he indicated he would not be released until August 2015 and did not have any family members for the Department to explore for possible relative placement. However, a short time later, Harris provided the Department with the name of his cousin and named her as a potential for relative placement.

The Department contacted the cousin, Ritzy Diamond, and learned Diamond had adopted three other special needs children. Although concerned Diamond would not be able to meet the special needs of Harris' child, the Department investigated Diamond as a possible relative placement. After August 2014, Diamond did not maintain contact with the Department despite being advised that "time was of the essence." In November 2014, Harris' counsel informed the Department that Diamond had moved from Florida to Alabama. As a result of the move, the Department was unable to complete the home study it had initiated.

After Diamond was eliminated as a placement option, Harris indicated his desire to have his child placed with him. Up until this time, Harris had indicated to the Department that if Diamond was unavailable for placement, he would consent to the termination of his residual parental rights. The Department provided Harris with information on services available to him while he remained incarcerated. Harris was serving a sentence for a drug-related charge. He also had a history of domestic violence and had been convicted of felony abandonment and child abuse. The Department recommended that Harris begin services immediately to address substance abuse, anger management, and parenting concerns. Although the Department requested that Harris inform them of the services he received, he never provided any information. Harris testified that the only service in which he participated while incarcerated was an anger management class he took prior to learning of his child's existence. Harris was unable to provide any specific information regarding his plans for his son.

Analysis

When reviewing a decision to terminate parental rights, we presume the circuit court "'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Id. at 265-66, 616 S.E.2d at 769 (quoting Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005)).

- 3 -

"The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. at 266, 616 S.E.2d at 769 (quoting Logan, 13 Va. App. at 128, 409 S.E.2d at 463). "In its capacity as factfinder, therefore, the circuit court retains 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Id. (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)).

Code § 16.1-283(C)(1) requires proof, by clear and convincing evidence that:

> The parent or parents have, without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship. Proof that the parent or parents have failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition.

In interpreting Subsection C, this Court has stated:

> [S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services.

Toms, 46 Va. App. at 271, 616 S.E.2d at 772 (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

In this case, the evidence demonstrated that Harris, upon learning about his child, made no effort to contact the child or establish a relationship. Instead, he announced his intention to voluntarily consent to the termination of his parental rights if his cousin was not awarded custody of the child. As a consequence, the Department did not actively attempt to introduce the child to Harris. Furthermore, Harris did not maintain contact with the Department during the

- 4 -

process despite repeated attempts from social workers to contact him and assist with his participation in offered services while he was still incarcerated. Harris did not provide for his child at any time during the child's life and presented no specific plan for the child's future beyond indicating he would seek to have his cousin adopt the child. The record demonstrates Harris has failed to provide or substantially plan for his child's future. Harris did not provide evidence that he would be able to provide for the child's special needs.

The trial court did not err in terminating father's parental rights pursuant to Code § 16.1-283(C)(1).

Accordingly, the trial court's decision is affirmed. See Rule 5A:27.

Affirmed.
